# United States Court of Appeals for the Federal Circuit

04-3391

YVONNE J. DICKEY,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

Karl W. Carter, Jr., of Washington, DC, argued for petitioner.

William K. Olivier, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were Peter D. Keisler, Assistant Attorney General, David M. Cohen, Director, Brian M. Simkin, Assistant Director. Of counsel on the brief was Earl A. Sanders, Special Counsel, Office of General Counsel, Office of Personnel Management, of Washington, DC.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3391

YVONNE J. DICKEY,

Petitioner,

v.

OFFICE OF PERSONNEL MANAGEMENT,

Respondent.

_____

DECIDED:  August 17, 2005
_____

Before MAYER, GAJARSA, and DYK, <u>Circuit Judges</u>.

GAJARSA, <u>Circuit Judge</u>.

Yvonne J. Dickey ("Ms. Dickey") appeals the final decision of the Merit Systems Protection Board ("MSPB") affirming the Office of Personnel Management's ("OPM") decision denying her claim to a spousal survivor annuity.  Ms. Dickey asserts that since she is the common-law widow of James L. Dickey ("Mr. Dickey"), a former government employee, she is entitled to survivor annuity benefits as Mr. Dickey's surviving spouse. OPM denied Ms. Dickey's claim based on its finding that she had failed to establish that she was married to Mr. Dickey.  <u>Dickey v. Office of Pers. Mgmt.</u>, No. DC-0831-04-0230-I-1 (May 12, 2004).  Because the MSPB committed legal error in relying on the alleged separation of Mr. and Ms. Dickey to reach its determination that the two were not

married at the time of Mr. Dickey's death, we vacate and remand the case to the MSPB for the application of the appropriate legal standard consistent with this opinion.

BACKGROUND

A.     Facts

Mr. Dickey, a former employee of Voice of America, United States Information Agency, Broadcasting Board of Governors, died without a will in the District of Columbia on February 3, 2001.  Mr. Dickey was employed by the federal government at the time of his death.

Ms. Dickey alleges that she and Mr. Dickey were common-law husband and wife from late April 1984, when they began living together at 71 G Street SW, Washington, D.C., to the time of his death in February 2001.

Ms. Dickey provided various amount of evidence in support of her claim.  First she submitted affidavits and testimony from her cousin Rachel Dorsey, her friend Isaiah Lewis, and her sister Annett Carmon (the "witnesses").  The witnesses attested to their understanding that the couple lived together as husband and wife.  In their affidavits, dated April 2001, the witnesses stated that it was their understanding that Ms. Dickey and Mr. Dickey had commenced living together as husband and wife in 1984, but that the couple had separated in 1987.

Ms. Dickey testified that she rented a second residence, at 905 6th Street SW, Washington, D.C., in late 1987, so that her son, who was returning home from college, could live with her.  She claimed that the 71 G Street residence in which she and Mr. Dickey had been living together was not big enough to accommodate both them and her son, so she rented another apartment.  She stated that she, Mr. Dickey, and her son

04-3391                                    2

stayed at 905 6th Street during the week, and that she and Mr. Dickey stayed at 71 G Street on weekends, when her son was not with them.

Ms. Dickey's testimony concerning the nature of her relationship with Mr. Dickey after she rented the 6th Street apartment was called into question by the affidavits of her witnesses. In 2001, the witnesses stated in their affidavits that the couple had separated in 1987. However, at the hearing before the Administrative Judge ("AJ"), all three witnesses recanted their testimony that the couple had separated in 1987, and asserted that the leasing of a second residence was precipitated by Ms. Dickey's son coming to live with her and the need for more space. The AJ found that this convenient change of stories undermined the credibility of these witnesses.

To further demonstrate that she was the common-law wife of Mr. Dickey, Ms. Dickey also provided her income tax returns for the years 1999 through 2001; she filed as "married, filing separately" in 1999 and 2000, and as "single" in 2001, after Mr. Dickey's death.

Ms. Dickey also provided copies of Mr. Dickey's health plan enrollment form for 1994, on which he enrolled Ms. Dickey as his wife. This is the only document in the record on which Mr. Dickey indicated that Ms. Dickey was his wife. It is worth noting, however, that in this document Mr. Dickey also declared himself to be unmarried.

Finally, Ms. Dickey provided a copy of a settlement agreement she reached with Mr. Dickey's daughter, Nakilah, during a 2003 suit in federal district court to establish her entitlement as his widow to Mr. Dickey's federal life insurance proceeds. Pursuant to the agreement, Nakilah received the bulk of Mr. Dickey's life insurance proceeds and waived her right to any of his survivor annuity benefits.

B.    The Proceedings Below

Ms. Dickey applied to OPM for death benefits as Mr. Dickey's surviving widow, and her claim was initially accepted and processed by OPM.  In addition, Ms. Dickey applied for and received Mr. Dickey's unpaid compensation from his employing agency based on her status as Mr. Dickey's common-law widow.  In acknowledging Ms. Dickey as the common-law widow of Mr. Dickey, the Deputy General Counsel of the Broadcasting Board of Governors stated that the agency was persuaded by the settlement agreement Ms. Dickey reached with Nakilah and by the three affidavits provided by Ms. Dickey attesting to the Dickeys' common-law marriage.

OPM subsequently suspended its payment of benefits to Ms. Dickey based on information that indicated that she was not Mr. Dickey's common-law wife at the time of his death.  In its reconsideration decision, OPM noted that in December of 1986, when Ms. Dickey filled out an application for retirement from federal service effective February 1, 1987, she stated that she was not married.  She also listed her name as Yvonne Jean Robinson, gave her address as 5609 Suitland Road, Suitland, MD, and elected a life annuity rather than a reduced annuity that would have provided a survivor annuity for her spouse.  The AJ found this to be the most probative evidence concerning Ms. Dickey's marital status because the document was prepared before Mr. Dickey's death and not in anticipation of litigation.  The AJ also noted that had Ms. Dickey declared herself to be married, she would have been required to either select a reduced annuity for her husband or provide a signed waiver from Mr. Dickey authorizing her to elect a life-only annuity.

04-3391                                                    4

The AJ was also influenced by the fact that Ms. Dickey had not provided any of the documentary evidence that OPM had requested and that could, in OPM's view, corroborate cohabitation as husband and wife. Specifically, Ms. Dickey did not demonstrate joint property ownership, joint bank accounts, joint leases, joint loans, joint utility bills, joint insurance policies, joint credit cards, or the like, despite the fact that Ms. Dickey alleges that she had lived with Mr. Dickey for seventeen years.

On the basis of this evidence, the AJ found that Ms. Dickey had failed to establish that she was the common-law widow of Mr. Dickey. Ms. Dickey did not file a petition of review of the initial decision of the AJ. Therefore, after 35 days, the initial decision became the final decision of the MSPB pursuant to 5 C.F.R. § 1201.113. Ms. Dickey now petitions this court for review. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9) (2000).

## DISCUSSION

A.      Standard of Review

Congress has expressly limited the scope of our review in an appeal from the MSPB. Specifically, we must affirm a decision of the MSPB unless it was "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000). Hairston v. Office of Pers. Mgmt., 318 F.3d 1127, 1130 (Fed. Cir. 2003). "Substantial evidence" is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938).

B.    Common-law Marriage Under the Law of the District of Columbia

In determining whether a common-law marriage existed, we must apply the laws of the state where the government employee had a permanent home when he or she died, in this case, the District of Columbia.  The District of Columbia has long recognized common-law marriages.  Hoage v. Murch Bros. Constr. Co., 50 F.2d 983 (D.C. Cir. 1931).  The elements of common-law marriage in the District of Columbia are an express mutual agreement, which must be in words of the present tense, followed by cohabitation as husband and wife.  East v. East, 536 A.2d 1103, 1105 (D.C. 1988).  The burden is on the proponent to prove, by a preponderance of the evidence, all of the essential elements of a common-law marriage.  United States Fid. & Guar. Co. v. Britton, 269 F.2d 249, 252 (D.C. Cir. 1959).

Courts view with caution claims of common-law marriage.  "Since ceremonial marriage is readily available and provides unequivocal proof that the parties are husband and wife, claims of common-law marriage should be closely scrutinized, especially where one of the purported spouses is deceased and the survivor is asserting such a claim to promote his financial interest."  Coates v. Watts, 622 A.2d 25, 27 (D.C. 1993).

In order to constitute a common-law marriage, both spouses must intend and expressly covenant to enter into a permanent relationship of husband and wife.  Cohabitation, even though continued and prolonged, without an express agreement to enter into a permanent married state does not result in a common-law marriage, irrespective of reputation.  A couple's expressions to each other that they are husband and wife can constitute mutual consent.  See Nat'l Union Fire Ins. Co. v. Britton, 187

04-3391                                          6

F. Supp. 359, 363-64 (D.D.C. 1960) (finding that expressions that the decedent was the husband of the plaintiff, and she his wife, constituted mutual agreement in words of the present tense to be husband and wife).  Although "the best evidence of the exchange of marriage consent between the parties would come from those who were personally present when they mutually agreed to take each other as husband and wife . . . a legal marriage may be established . . . by what is called habit or repute." Travers v. Reinhardt, 205 U.S. 423, 436 (1907).  Thus, like any other fact, existence of the agreement to become husband and wife may be established by either direct or circumstantial evidence.  Nat'l Union Fire Ins., 187 F. Supp. at 363.  However, an inference of common-law marriage may be rebutted by direct evidence that there was no present agreement.  Marcus v. Dir., Office of Workers' Comp. Programs, U.S. Dep't of Labor, 548 F.2d 1044, 1048 n.9 (D.C. Cir. 1976).

In Marcus, the United States Court of Appeals for the District of Columbia found no common-law marriage between Joan Hawker and Alphonso Marcus where Marcus presented only circumstantial evidence of a mutual agreement to marry.  The evidence included:  a "congratulations card" sent to friends and signed as "Joan and Fonso," unsolicited letters addressed to "Joan Marcus" and a promissory note signed by "Joan Hawker Marcus."  Id. at 1049 n.13.  The evidence rebutting the inference of marriage consisted of testimony by witnesses that while living, Joan had referred to Marcus as her "boyfriend," never acknowledged their marriage to relatives or employers, continued to date other men, and even contemplated marriage with another man.  Id. at 1049 n.14.  Further evidence rebutting the inference of marriage included the facts that all of her employment records had been in her maiden name.  Id.  Similarly, her INS card,

death certificate, and statement of burial expenses referred only to her maiden name. Id.

In cases where one party is available as a witness, courts have typically required more direct evidence of consent. The United States Court of Appeals for the District of Columbia Circuit has held that "when one of the parties to the alleged marriage asserts its existence but either denies or fails to say there was mutual consent or agreement, then mere cohabitation, even though followed by reputation, will not justify an inference of mutual consent or agreement to be married." United States Fid. & Guar. Co., 269 F.2d at 252. This holding has been interpreted to stand for the rather unremarkable proposition that "[i]f at least one of the parties to the alleged marriage is available as a witness," the living party must assert that there was mutual consent to be married. Jackson v. Bowen, 690 F. Supp. 58, 59 (D.D.C. 1988).

Although formation of a common-law marriage is notoriously simple under the laws of the District of Columbia, dissolution is relatively difficult. Once a common-law marriage has been established, it can only be terminated by death or by a divorce decree. Lee v. Lee, 201 A.2d 873, 875 (D.C. 1964).

C. Existence of a Common-law Marriage

In finding that Ms. Dickey had not established the existence of a common-law marriage the AJ relied primarily on two determinations: (1) the evidence showed that the Dickeys were no longer cohabiting after 1987; and (2) the testimony of the witnesses and Ms. Dickey regarding the Dickeys' living arrangements after 1987 was not credible. Neither of these determinations, however, addresses whether or not the Dickeys entered into a common-law marriage in 1984.

The AJ concluded that the witnesses' affidavits established that Mr. and Ms. Dickey separated at some point in 1987.  This circumstance is irrelevant to determining whether Mr. and Ms. Dickey were married under the common-law.  A separation does not preclude the prior formation of a common-law marriage.  Nat'l Union Fire Ins., 187 F. Supp. at 364 ("The fact that a married couple separates obviously does not affect the validity of the prior marriage.").  Once such a union has been formed, it is not nullified by mere physical separation.  The formalities and strictures of a formal divorce proceeding are required to dissolve the marriage.

In light of the AJ's heavy reliance on the 1987 separation throughout the opinion, it seems clear that the AJ misapplied the legal standard of common-law marriage in the District of Columbia.  Disregarding the separation in 1987 and the Dickeys' subsequent living arrangements, the legal question before us is whether Mr. and Ms. Dickey entered into a common-law marriage in 1984.

There is significant evidence in the record to support a finding of common-law marriage.  Ms. Dickey was available and testified to the mutual consent to her marriage to Mr. Dickey.  Both her testimony and the statements of the witnesses are evidence that the couple began living together in April of 1984; that they lived together for a period of three years, until Ms. Dickey acquired a second residence; that they considered each other to be husband and wife; and that they held themselves out as such in their community.  These circumstances are sufficient to establish the formation of a common-law marriage under the laws of the District of Columbia.  Further, Ms. Dickey twice filed federal income tax returns indicating that she was married.  False returns are subject to the penalty of perjury.  26 U.S.C. § 7207 (2000).

However, there is also sufficient evidence to support a contrary finding. The AJ concluded that the witnesses' testimony regarding the Dickeys' behavior in the period post 1987 was not credible. The AJ further disbelieved Ms. Dickey regarding the formation of a common-law marriage in 1984 on the basis that Ms. Dickey filled out her Civil Service Retirement Death Benefits form in the name of Yvonne Jean Robinson in 1986. Additionally, the administrative judge could rely on the facts that Ms. Dickey kept her previous name, that she elected a life-annuity for herself to the exclusion of a survivor annuity for Mr. Dickey in 1986, and that Mr. Dickey neither designated her as a beneficiary nor engaged in any joint enterprises with her.

Although we may not necessarily agree with the weight given to these findings, the AJ was entitled to entirely disbelieve the witnesses in light of the fact that they contradicted themselves. Similarly, the AJ was entitled to disbelieve Ms. Dickey because her testimony contradicted her statement in the 1986 retirement application that she was not married at the time. Ms. Dickey's 1986 statement creates an issue of fact that must be resolved by the MSPB. See Checkpoint Sys., Inc. v. All-Tag Sec. S.A., No. 04-1395, slip op. at 11 (Fed. Cir. June 20, 2005).

The AJ's holding that "any marriage-like relationship formed in 1984 ended in 1987," Dickey, slip op. 11, is clear legal error. As explained above, a common-law marriage, if it existed, cannot be terminated merely by separation. The AJ's heavy reliance on the 1987 separation throughout the opinion, causing a misapplication of the common-law marriage rule, requires the decision to be vacated and remanded.

## CONCLUSION

For the reasons stated above, we conclude that although there was substantial evidence that could support a finding of common-law marriage, the evidence could also support a contrary finding. Consequently, we remand this case to the Board to determine whether there was a common-law marriage in 1984 by applying the correct legal standard.

Accordingly, the decision of the MSPB is

## VACATED AND REMANDED.

## COSTS

Each party shall bear its own costs.