Note: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3061

JULIA DAVIS,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Julia Davis, of Palm Springs, California, pro se.

Domenique Kirchner, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent. With her on the brief were Peter D. Keisler, Assistant Attorney General, and Bryant G. Snee, Assistant Director.

Appealed from: United States Merit Systems Protection Board

NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2006-3061

JULIA DAVIS,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

_____

DECIDED:   May 30, 2007

_____

Before RADER, GAJARSA, and DYK, <u>Circuit Judges</u>.

PER CURIAM.

The petitioner, Julia Davis, seeks review of a final decision by the Merit Systems Protection Board ("Board" or "MSPB") denying her Petition for Review of an Initial Decision of an Administrative Judge concluding that she voluntarily resigned from her position as a Customs and Border Patrol Officer ("CBPO") for the Department of Homeland Security ("DHS").  The Board refused to consider an inconsistent decision of the EEOC based on the same sexual harassment charges as the Administrative Judge considered, giving as its sole reason that it did not consider "any of the parties'

submissions filed after May 23, 2005." <u>See</u> <u>Davis v. Dep't of Homeland Sec.</u>, No. SF-0752-04-0760-I-1, 2005 (M.S.P.B. Sept. 21, 2005).  For the reasons stated herein, we <u>vacate</u> and <u>remand</u> to the Board.

BACKGROUND

Ms. Davis was employed by the DHS as a CBPO at the San Ysidro Port of Entry in southern California.  In early 2003, Ms. Davis complained she was sexually harassed by a senior supervisor.  She filed a formal complaint for sexual harassment with the Equal Employment Opportunity Commission ("EEOC").  The EEOC determined that the supervisor had harassed Ms. Davis and awarded her damages.  The transcript and decision of the EEOC were not admitted as a part of the evidentiary record before the Board.

During early 2004, Ms. Davis applied for and was granted 480 hours of unpaid Family and Medical Leave Act ("FMLA") leave to care for her allegedly terminally ill husband.  Ms. Davis applied for and was also granted additional FMLA leave, but the additional leave was for therapy for her post-traumatic stress disorder resulting from the harassment.  While Ms. Davis was on FMLA leave, her supervisor Ms. Boutwell learned that Ms. Davis was actually present on a movie set, where her husband was the director.  In an ensuing investigation, the Assistant Director of Operations at the Portland Field Office determined that Ms. Davis had submitted fraudulent FMLA leave requests.  The Assistant Director found that (1) the medical certification provided by Ms. Davis was insufficient to justify the FMLA leave taken, (2) the movie was filmed during the time that Ms. Davis took FMLA leave, (3) Ms. Davis wrote the screenplay for the movie, (4) Ms. Davis and her husband were on the movie set during the period she

was on FMLA leave, and (5) Mr. Davis was not incapacitated. Based upon these findings, he concluded that the allegation that Ms. Davis had submitted fraudulent FMLA leave requests was substantiated.

Upon returning from her FMLA leave, Ms. Davis made numerous allegations against Ms. Boutwell. She alleged that Ms. Boutwell (1) purposefully assigned her to work with contagious aliens having HIV or tuberculosis ("TB"), causing her to contract TB; (2) threw her handbag on the floor, resulting in damage to her cell phone; (3) lowered her interim performance rating from "outstanding" to "excellent"; and (4) broke into her locker. She alleged that Ms. Boutwell pursued these actions because of Ms. Davis's national origin, gender, and/or prior EEO complaint. Ms. Davis's allegations that Ms. Boutwell behaved improperly were found to be unsubstantiated, except for the allegation regarding the locker break-in because that investigation was not completed prior to Ms. Davis's resignation.

In addition to her complaints regarding Ms. Boutwell, Ms. Davis also made three allegations of agency misconduct categorizing them as "whistle-blowing disclosures." First, Ms. Davis sent a memorandum to the DHS Office of Inspector General ("OIG") asserting that the Assistant Area Port Director and the CBPO Supervisor ordered a CBPO to falsify a document. This allegation was later determined to be unfounded. Second, six days later Ms. Davis faxed a memorandum to the FBI, alleging that a "national security breach" had occurred on July 4, 2004. This allegation was later found meritless, as well. Third, Ms. Davis alleged to the DHS OIG that supervisors ordered a subordinate to falsify detention cell records. This allegation was also later determined

to be unfounded. Thus, all three of Ms. Davis's "whistle-blowing" disclosures – made in less than one month – were later found meritless.

In August, Ms. Davis complained that she was denied the opportunity to work overtime on Sundays in retaliation for her prior EEOC and whistle-blowing activities. This complaint was also determined to be unfounded since she had been on FMLA leave for over a month and a half and had been scheduled to work on at least three Sundays since she had returned from leave.

On August 19, 2004, Ms. Davis was directed to appear before the DHS Office of Professional Responsibility ("OPR") on August 26, 2004 to testify regarding her various allegations. Pending the investigation, the Associate Special Agent in Charge of the OPR placed her on non-duty pay status, and revoked her credentials, weapon, and computer access. Subsequently, Ms. Davis notified the DHS on August 23, 2004 that she was "involuntarily resigning." Consequently, she did not testify before the OPR as requested. On August 30, 2004, Ms. Davis then filed a constructive discharge (i.e. involuntary resignation) claim before the MSPB.

Ms. Davis claimed that the DHS's actions were taken in retaliation for her filing an EEO complaint and making protected whistle-blowing disclosures. A hearing was held before an Administrative Judge ("AJ") of the MSPB. Based on oral testimony at the hearing and other submitted record evidence, the AJ concluded that the working conditions were not so severe that a reasonable person in her position would have felt compelled to resign. He found that, while Ms. Davis may have been subjected to sexual harassment, the agency took appropriate measures to curtail the conduct. The AJ found insufficient evidence to support a finding that Ms. Boutwell caused Ms. Davis to

contract TB, that she singled out Ms. Davis for contact with contagious aliens, or that Ms. Boutwell forcibly threw Ms. Davis's handbag. He further determined that none of the allegations against Ms. Boutwell were supported by the evidence. Moreover, the AJ found that the agency investigations of Ms. Davis, including the fraudulent request for FMLA leave, by their very nature, would have been stressful for Ms. Davis. He concluded, however, that stress and anxiety do not demonstrate that a reasonable person would have been compelled to resign. According to the AJ, the DHS had a legitimate basis to investigate the truthfulness of Ms. Davis's allegations. For example, the facts Ms. Davis raised in support of her request for FMLA leave appeared to be contradicted by the evidence. The AJ also determined that her inconsistent statements raised genuine issues as to the truthfulness of her allegations that supervisors had ordered subordinates to falsify documents.

The AJ concluded that Ms. Davis had "freely and voluntarily" resigned because she resigned in the face of an agency order to appear for further questioning regarding the truthfulness of her allegations. Since the AJ found that Ms. Davis voluntarily resigned, he also decided that the Board had no jurisdiction over Ms. Davis's Individual Right of Action ("IRA") claim because there was no adverse action under 5 U.S.C. § 2302(a). After the initial decision of the AJ, on June 17, 2005, the EEOC issued a decision concerning the same sexual harassment charges as were raised before the AJ. The EEOC found that the supervisor's 'inappropriate conduct and the agency's complicity were so objectively offensive as to alter the conditions of complainant's employment. Given the nature and depth of the agency's betrayal of

complainant, no reasonable person could have continued working in such an employment environment.'

Ms. Davis filed a Petition for Review by the Board of the Initial Decision of the AJ. On July 6, 2005, she also moved to have the EEOC transcript and the EEOC's decision regarding her sexual harassment claim admitted into the record. The Board denied Ms. Davis's Petition for Review, making the AJ's decision final. The Board denied the petition because it concluded there was no new, previously unavailable evidence and the AJ made no error in law or factual determination. Id. In reaching this decision, the Board noted that it did not consider any submissions filed after May 23, 2005, which was the date the evidentiary record closed. Id. Ms. Davis appeals the final Board decision to this court.

## DISCUSSION

We have jurisdiction over an appeal of a final decision of the Board pursuant to 28 U.S.C. § 1295(a)(9). Whether the Board has jurisdiction to adjudicate a particular appeal is a question of law, which this court reviews de novo. Herman v. Dep't of Justice, 193 F.3d 1375, 1378 (Fed. Cir. 1999); Middleton v. Dep't of Def., 185 F.3d 1374, 1379 (Fed. Cir. 1999). The Board has jurisdiction over an appeal filed by an employee who has resigned if the employee proves, by a preponderance of the evidence, that his resignation was involuntary, and thus tantamount to removal. Staats v. U.S. Postal Serv., 99 F.3d 1120, 1123-24 (Fed. Cir. 1996).

This court must affirm the Board's decision unless we find it to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or

unsupported by substantial evidence. 5 U.S.C. § 7703(c).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Dickey v. Office of Pers. Mgmt., 419 F.3d 1336, 1339 (Fed. Cir. 2005) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

A determination of the credibility of witnesses is the province of the official who heard their testimony and saw their demeanor.  Griessenauer v. Dep't of Energy, 754 F.2d 361, 364 (Fed. Cir. 1985). Thus, credibility determinations are virtually unreviewable.  Id.  There is a presumption that administrative actions are correct and that "government officials act in good faith" in discharging their duties.  Gonzales v. Def. Logistics Agency, 772 F.2d 887, 892 (Fed. Cir. 1985).

I.

Ms. Davis argues that the Board made an improper "boilerplate" decision denying her Petition for Review of the Initial Decision and that this Court should conduct a de novo review of the evidence.  She asserts that the Board did not state with sufficient particularity and clarity the reasons for denying review and relies on Ninth Circuit cases as persuasive authority for this requirement. Ninth Circuit precedent does not bind this circuit, but may be persuasive authority.  In this case, however, the Board sufficiently expressed its reasons for denying review pursuant to 5 C.F.R. §§ 1201.115(d) and 1201.114(i).  Specifically, the Board noted that the newly submitted evidence was previously available, the AJ made no error in law or regulation that affected the outcome, and the record on review had already closed. Id.  Thus, the Board did not issue a "boilerplate" decision.

II.

Ms. Davis claims that the AJ violated her due process rights by being pre-disposed against her, hampering her presentation of the case, and abusing his discretion. Ms. Davis has only provided conclusory characterizations of the judge's behavior during the hearing without identifying any specific examples from the record in support. Hence, she has not demonstrated that the AJ violated her due process rights.

III.

To establish Board jurisdiction where a claim of involuntary resignation is made, an appellant must overcome the presumption of voluntariness by making a non-frivolous allegation that the resignation was the result of misinformation, deception, or coercion by the agency. Dick v. Dep't of Veterans Affairs, 290 F.3d 1356, 1362 (Fed. Cir. 2002). Coercion is established by proving: "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party. . ." Middleton v. Dep't of Def., 185 F.3d 1374, 1379 (Fed. Cir. 1999). The former employee must prove by a preponderance of the evidence that, under the totality of the circumstances, a reasonable person in the appellant's position would have felt compelled to resign. Shoaf v. Dep't of Agric., 260 F.3d 1336, 1341-42 (Fed. Cir. 2001); Middleton, 185 F.3d at 1379.

We consider first Ms. Davis's allegations of involuntary resignation caused by factors other than her sexual harassment charge. With respect to those, Ms. Davis does not contend that her resignation was the product of misinformation or deception, and her appeal does not appear to fall into the "coercion" category. Under a Middleton analysis, Ms. Davis's resignation was not the result of coercion. Specifically, Ms. Davis

did not involuntarily accept the terms of the DHS, and the circumstances permitted her to remain an employee and participate in the investigations into her conduct. Further, the circumstances surrounding Ms. Davis's resignation were not the result of coercive acts of the DHS. She was found to have fraudulently represented her need for FMLA leave, and she compounded her deception by making what was determined to be additional false allegations.

Since involuntary resignation is a totality of the circumstances test according to Shoaf, Ms. Davis's subsequent allegations contributed to the circumstances and cannot be ignored. All of her allegations, other than her sexual harassment, were determined to be "unfounded" and when investigated, frivolous. Thus we conclude that Ms. Davis's allegations, other than her sexual harassment charge, do not support a finding that her resignation was coerced. Ms. Davis chose to resign over a year after her sexual harassment allegation had been resolved when the agency was asking her to testify regarding the truthfulness of the additional allegations.

IV.

The Board has jurisdiction over whistle-blowing cases if:

[T]he appellant has exhausted administrative remedies before the [Office of Special Counsel] and makes 'non-frivolous allegations' that (1) he engaged in whistle-blowing activities by making a protected disclosure under 5 U.S.C. § 2302(b)(8), and (2) the disclosure was a contributing factor in the agency's decision to take a personnel action as defined by 5 U.S.C. § 2302(a).

Fields v. Dep't of Justice, 452 F.3d 1297, 1302 (Fed. Cir. 2006) (emphasis added). Also, Congress has specified the types of disclosures that implicate the safeguards of the act in 5 U.S.C. § 2302(b)(8).

Ms. Davis argues that even if her resignation was voluntary, the agency still took other adverse actions. Specifically, she stated that (1) the removal of her weapon and badge and revocation of her credentials and computer access, (2) the indictment for marriage fraud caused by the investigation into her FMLA leave, (3) the selective assignments to work with contagious aliens, and (4) a lowered performance evaluation were adverse actions. With respect to the removal of her weapon, badge, credentials and computer access, this action occurred after her last day of work. The indictment for marriage fraud, which resulted from the investigation into her FMLA leave and not from her alleged "whistle-blowing" activities, is not included in the record on appeal to he Board. The indictment occurred on August 9, 2005 after the record closed on May 23, 2005. Furthermore, the alleged assignment to work with contagious aliens and the lowering of her performance rating occurred before she began making her "whistle-blowing" disclosures. These actions were not therefore adverse. Since Ms. Davis has not shown any adverse actions taken by the DHS in retaliation to her disclosures, the AJ appropriately found that there is no jurisdiction over her IRA claim.

V.

The Board did not err by denying the admission of the EEOC transcript into evidence after the record was closed on May 23, 2005. Board regulations provide that "[o]nce the record closes, no additional evidence or argument will be accepted unless the party submitting it shows that the evidence was not readily available before the record closed." 5 C.F.R. § 1201.114(i). As the DHS points out, many of the witnesses who testified before the EEOC also testified before the AJ. Ms. Davis could have personally testified but did not. Also, the other witnesses who testified on her behalf at

the EEOC hearing could have been called but were not. Thus, since Ms. Davis has not demonstrated that these documents contain evidence that was not previously available when the record closed, she has not proven that the denial to admit them is erroneous and the Board properly denied the admission of the EEOC hearing transcripts. However, the EEOC final opinion was not issued until June 17, 2005, which was after the closing date for the evidence to be submitted to the Board. That decision was inconsistent with the determination made by the AJ in the Initial Decision. The Board, faced with this inconsistency, should have considered the final decision of the EEOC. Only for this reason we vacate and remand to the Board. Upon remand, the Board should consider the conclusion reached by the respective agencies, and resolve the inconsistencies, if any. Our remand does not necessarily require that the Board reach a different result; for example, the Board could find that the sexual harassment was too far removed in time from Ms. Davis's resignation to have rendered that resignation involuntary, or that her resignation was voluntary because other factors described above—unrelated to the harassment—caused her to resign voluntarily.

For the foregoing reasons, the Board's final decision is vacated and remanded for further proceedings consistent with this opinion.

No costs.