NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SHERMAN HOWARD,**
*Petitioner*

**v.**

**DEPARTMENT OF THE AIR FORCE,**
*Respondent*

---

2016-1364

---

Petition for review of the Merit Systems Protection Board in No. DA-0752-13-0290-I-3.

---

Decided: February 27, 2017

---

SHERMAN HOWARD, Schertz, TX, pro se.

MARK E. PORADA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., FRANKLIN E. WHITE, JR.

---

Before PROST, *Chief Judge*, DYK and STOLL, *Circuit Judges*.

PER CURIAM.

Mr. Sherman Howard appeals the decision of the Merit Systems Protection Board sustaining the Air Force's removal action against him. The Board affirmed Mr. Howard's removal based on four charges and also found that Mr. Howard's "extraordinary lack of productivity" over a period of several years was an aggravating factor. We affirm the Board's decision.

## BACKGROUND

The Air Force employed Mr. Howard as an auditor at the Randolph Air Force Base. The Air Force sent Mr. Howard a Notice of Proposed Removal ("NPR") on September 29, 2008, listing reasons for removal that included: 1) misuse of government resources for personal gain; 2) conducting outside employment during paid duty hours; 3) threatening to inflict bodily harm on others; and 4) failure to disclose all outside employment. On November 20, 2008, the Air Force removed Mr. Howard from his position. In reaching this decision, the deciding official relied on Mr. Howard's "extremely low production"—a ground that was not listed in the NPR—as an aggravating factor. J.A. 50. An administrative judge ("AJ") affirmed on appeal, finding that the removal action fell within the bounds of reasonableness and also citing Mr. Howard's poor performance as a factor in her decision.

Mr. Howard petitioned for review of the initial decision, arguing that the AJ erred by considering Mr. Howard's poor performance as an aggravating factor. The Board agreed that the Air Force and the AJ improperly relied on Mr. Howard's performance because the NPR did not list it as a reason for removal. In an attempt to remedy the error, the Board performed a new reasonableness analysis that ignored Mr. Howard's poor performance. *Howard v. Dep't of Air Force*, 114 M.S.P.R. 482, 484–85 (2010). Under this new analysis, the Board still concluded that the removal penalty fell within the bounds

of reasonableness and affirmed the AJ's decision. *Id.* at 485–86.

While Mr. Howard's appeal of the Board's decision was pending before us, we issued our decision in *Ward v. U.S. Postal Service*, 634 F.3d 1274 (Fed. Cir. 2011). The NPR for the employee in that case, Mr. Ward, listed only a single charge of improper conduct. Yet the deciding official admitted that his decision to remove Mr. Ward was based, in part, on information obtained through *ex parte* communications about past incidents involving Mr. Ward. *Id.* at 1276. We remanded for the Board to address two issues. First, we required the Board to consider whether Mr. Ward's due process rights were violated by the deciding official's reliance on *ex parte* communications that introduced new information not included in the NPR. If a violation occurred, we explained that it may not be excused as harmless error and Mr. Ward must be afforded a "constitutionally correct removal procedure." *Id.* at 1280 (quoting *Stone v. FDIC*, 179 F.3d 1368, 1377 (Fed. Cir. 1999)). Second, even if the *ex parte* communications did not rise to the level of a due process violation, the Board was required to perform a harmless error analysis to determine whether the procedural error—i.e., the agency's reliance on evidence not contained in the NPR—necessitated a reversal. *Id.* at 1281. Although the Board believed it could remedy the error by independently determining whether the removal penalty was within the bounds of reasonableness, we found instead that a harmless error analysis was required on remand. *Id.*

The Air Force moved to remand this case in light of our *Ward* decision. We agreed that the Board impermissibly "performed its own reasonableness analysis instead of a harmless error analysis to determine if the agency would have still removed Howard absent consideration of his poor performance." *Howard v. Dep't of Air Force*, 452 Fed. App'x 965, 966 (Fed. Cir. 2011) ("*Remand Order*"). Accordingly, we granted the Air Force's motion and "re-

manded to the Board for further proceedings in light of *Ward*," including the performance of a harmless error analysis. *Id.*

On remand, the Board determined that the Air Force violated Mr. Howard's due process rights. Although it was undisputed that the NPR did not list Mr. Howard's lack of production as an aggravating factor, the deciding official admitted that this information influenced his decision. *Howard v. Dep't of Air Force*, 118 M.S.P.R. 106, 109–10 (2012) ("*Opinion on Remand*"); *see also* J.A. 1337. This left Mr. Howard unaware of, and unable to respond to, the aggravating factor before the deciding official issued his decision. The Board found the due process violation "cannot be excused as harmless, and [Mr. Howard]'s removal must be cancelled." *Opinion on Remand*, 118 M.S.P.R. at 110. Consequently, the Board ordered cancellation of Mr. Howard's removal proceeding, reinstatement of Mr. Howard effective as of the date of his removal, and an award of back pay, interest on the back pay, and other benefits. *Id.*

Several months later, on October 29, 2012, the Air Force notified Mr. Howard in a new NPR that it was again seeking his removal. This NPR listed the same four charges as the first NPR but also included "lack of work production over several years" as an additional factor justifying his removal. J.A. 39. The Air Force removed Mr. Howard on March 20, 2013. An AJ affirmed the Air Force's removal action on September 28, 2015, finding that the Air Force had proven the merits of its case by a preponderance of the evidence.

When Mr. Howard elected not to seek review by the full Board, the AJ's initial decision became the final decision of the Board. Mr. Howard's appeal to this court timely followed. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

DISCUSSION

The scope of our review in an appeal from the Board is limited by statute. We must affirm the Board's decision unless it was: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see also Briggs v. Merit Sys. Prot. Bd.*, 331 F.3d 1307, 1311 (Fed. Cir. 2003).

Mr. Howard's arguments on appeal allege violations of the law of the case doctrine and judicial estoppel, a lack of substantial evidence to support various findings made by the Board, laches, a failure to establish a nexus between Mr. Howard's misconduct and the efficiency of the service, protected status as a whistleblower, and retaliation based on his filing of an Inspector General Complaint. We do not find any of these arguments meritorious.

I.

Mr. Howard contends that on remand the Board violated the mandate rule, which is a subset of the law of the case doctrine, by conducting a due process analysis even though our opinion remanding the case instructed the Board to "perform a harmless error analysis as detailed in *Ward.*" *Remand Order*, 452 Fed. App'x at 966.

The law of the case doctrine requires a lower court to adhere to an appellate court's ruling. The doctrine, which was created to promote judicial efficiency, provides that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988)). Under the mandate rule, a lower court "has no power or

authority to deviate from the mandate issued by an appellate court," *Briggs v. Pennsylvania Railroad*, 334 U.S. 304, 306 (1948), and the rule is limited to issues "'actually decided, either explicitly or by necessary implication' in the previous litigation," *Banks*, 741 F.3d at 1276 (quoting *Toro Co. v. White Consol. Indus., Inc.*, 383 F.3d 1326, 1335 (Fed. Cir. 2004)).[1]

As an initial matter, we note that our one-page opinion remanding the case to the Board never "actually decided, either explicitly or by necessary implication," *id.* (quoting *Toro*, 383 F.3d at 1335), whether there was harmless error, a due process violation, or both.  We remanded for the Board to address these questions in the first instance.  Although Mr. Howard is correct that we gave the Board directions to perform a harmless error analysis, the order itself was broader: "The [Air Force's remand] motion is granted and the appeal is remanded to the Board for further proceedings in light of *Ward*." *Remand Order*, 452 Fed. App'x at 966.  The Board followed our instructions and concluded that, "because the [Air Force] violated the appellant's due process guarantee to notice, the [Air Force]'s error *cannot be excused as harmless*, and the appellant's removal must be cancelled." *Opinion on Remand*, 118 M.S.P.R. at 110 (emphasis added).  Indeed, our opinion in *Ward* explicitly discussed both harmless error and due process analyses and reminded the Board that it "may not excuse [a] constitutional [due process] violation as harmless error." *Ward*, 634 F.3d at 1280.  We agree with the Air Force that the Board did not run afoul of the mandate rule by reaching

---

[1]    Courts have recognized three "exceptional circumstances" under which a lower court need not follow an appellate ruling in a prior appeal, but none of them apply here. *See Banks*, 741 F.3d at 1276.

the due process issue as part of its *Ward*/harmless error analysis on remand.

## II.

Next, Mr. Howard urges us to invoke judicial estoppel to bar the Air Force's second removal action against him. The main thrust of his argument appears to be that the agency's action in seeking a remand in light of *Ward* is inconsistent with its position in the second removal action. Specifically, Mr. Howard claims it is inconsistent for the Air Force to initiate a second removal proceeding on the same charges that the Board previously deemed insufficient to justify removal. Appellant Br. 29–30.

This argument is not compelling. Judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000). Although the circumstances for invoking judicial estoppel cannot be "reduc[ed] to any general formulation of principle," *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quoting *Allen v. Zurich Ins.*, 667 F.2d 1162, 1166 (4th Cir. 1982)), the Supreme Court has articulated several factors to guide us in determining whether to apply it in a particular case:

> First, a party's later position must be "clearly inconsistent" with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled[.]" . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* at 750–51 (internal citations omitted).

Under the first factor, it is not clear how the Air Force's position in the first removal proceeding—that a remand was warranted in light of *Ward*—is inconsistent with the Air Force's second, constitutionally correct removal proceeding. The Air Force pursued the same four charges and aggravating factor in both proceedings, with the proper constitutional procedure serving as the only pertinent difference between them. In addition, contrary to Mr. Howard's contention, the Air Force never stated or implicitly admitted that it would not have removed Mr. Howard in the first proceeding absent consideration of his poor performance. With respect to the second factor, our court never addressed whether removal was appropriate in the first removal proceeding. Accordingly, the Air Force did not "succeed[] in persuading" this court to accept its position on the merits. *Id.* at 750.

Finally, under the third factor, Mr. Howard contends that the Air Force derived an unfair advantage from its inconsistent positions because it was permitted to initiate a second removal proceeding. Initiating a new removal proceeding to remedy a procedural error does not confer on the Air Force an "unfair advantage." Nor does it impose on Mr. Howard an "unfair detriment." Indeed, our decision in *Ward*—the case that precipitated the remand in the first removal proceeding—explicitly envisions that an agency would follow the very steps taken by the Air Force here: "If the Board finds that [there was a] violation of Ward's due process rights, Ward must be afforded a 'constitutionally correct removal procedure.'" *Ward*, 634 F.3d at 1280 (quoting *Stone*, 179 F.3d at 1377). Following our directive in *Ward* and remedying the constitutional violation did not provide the Air Force with an unfair advantage. In sum, Mr. Howard has failed to convince us that judicial estoppel applies in this case.

III.

Mr. Howard also alleges that there is not substantial evidence to support: 1) the misuse of government resources charge; 2) the threatening bodily harm charge; 3) the failure to report outside employment charge; and 4) the aggravating factor of poor performance. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dickey v. Office of Pers. Mgmt.*, 419 F.3d 1336, 1339 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Contrary to Mr. Howard's contention, each of these charges is supported by substantial evidence, as discussed below.

A.

With respect to the misuse of government resources charge, the AJ primarily relied on the Commander Directed Investigation ("CDI") into Mr. Howard's use of government resources for personal gain. As part of the CDI, the Office of Special Investigations performed a forensic analysis of Mr. Howard's work laptop. Between the years 2000 and 2007, the forensic analysis discovered 377 non-duplicative files, emails, and internet searches relating to Mr. Howard's outside employment as an instructor at the San Antonio Community College. J.A. l032. The analysis showed that Mr. Howard's usage of his laptop for outside purposes increased over time— 312 of the 377 files were created or accessed between mid-2004 and 2007—and 58% of the instances took place during regular duty hours. J.A. 1032. The CDI also detailed Mr. Howard's admissions that he had conversations with his students at the community college during normal duty hours, used the office printer for his teaching position, and periodically used the office to support his teaching position. J.A. 480–82.

Mr. Howard does not deny that he used government resources for his teaching job, but claims his use was

limited, condoned by his supervisors, and did not adversely affect the efficiency of the service. The Air Force does have a limited-use policy that permits employees to use the internet and office equipment for unofficial purposes, provided that it does not interfere with official business and involved minimal additional expense to the government. The AJ, however, concluded that Mr. Howard's use of government resources "went far beyond 'limited use.'" J.A. 12. The AJ also determined that, although Mr. Howard's supervisors were generally aware of his position as a teacher at the community college, Mr. Howard failed to show that these supervisors condoned his extensive use of government equipment in furtherance of that position. Indeed, one of Mr. Howard's supervisors testified that he was "concerned" after he found the teaching-related files on Mr. Howard's government laptop. J.A. 1993. This is substantial evidence to support the Board's conclusion that Mr. Howard's use of government resources went far beyond limited use.

B.

The threatening bodily harm charge stemmed from an argument between Mr. Howard and another employee during a team meeting. A third employee, Melanie Schneider, intervened and suggested that Mr. Howard's decision to park his car in the incorrect spot caused the argument. Mr. Howard's Team Chief, Ms. Lampman, then chided him for parking in the wrong spot. After the meeting, Mr. Howard approached Ms. Schneider in the hallway and told her "you'd better watch yourself." J.A. 1928. He repeated this warning later that same day while standing in the doorway to the copier room, adding "you'd just better watch your back." *Id.* Ms. Schneider testified that these remarks were not made in a friendly manner, caused her to be somewhat fearful of Mr. Howard, and bothered her enough that she discussed the incident with her husband and Ms. Lampman because she did not know what Mr. Howard meant or how he would

react to her. The AJ also found Ms. Schneider's testimony more credible than Mr. Howard's testimony: the AJ described Ms. Schneider's memory of the events as "clear," "detailed," and consistent with testimony from previous hearings, whereas the AJ found Mr. Howard's testimony internally inconsistent. J.A. 18.

On appeal, Mr. Howard relies on a portion of Ms. Schneider's testimony in the first proceeding in which she stated that Mr. Howard did not threaten to inflict bodily harm on her. J.A. 1441. But Ms. Schneider clarified during the second removal proceeding that she answered the question narrowly based on the way it was phrased:

> THE COURT: And when you said he didn't threaten you with bodily harm, you're saying he didn't specifically say, I'm going to break your leg, I'm going to do whatever.
>
> MS. SCHNEIDER: Correct. Correct.
>
> THE COURT: So there was no specific mention of what he was going to do. But your fear was that he was going to do something physically to you.
>
> MS. SCHNEIDER: Yes. Yes, ma'am.

J.A. 1934. She also stated that Mr. Howard's comments made her afraid and that she did feel that Mr. Howard threatened her.

Mr. Howard also urges us to reweigh the evidence underlying the threat-of-bodily-harm charge. He lists a series of ten facts that allegedly undermine the AJ's decision.[2] For example, Mr. Howard notes that

---

[2] In addition, Mr. Howard contends that the threatening to inflict bodily harm charge should be barred by laches because the threat took place in 2005 and the Air

Ms. Schneider was the only person who heard the comments in question, Ms. Schneider did not report her concern to any agency official besides Ms. Lampman, and Ms. Schneider did not accuse Mr. Howard of threatening bodily harm during her CDI interview. Our task as an appellate court, however, is to evaluate whether substantial evidence supports the AJ's conclusion, not to determine whether other competing facts exist that might support a contrary conclusion. Based on the evidence relied on by the Board in its decision, we are convinced that substantial evidence supports the Board's conclusion that Mr. Howard threatened Ms. Schneider with bodily harm.

## C.

With respect to the failure to report outside employment charge, the record reflects that Mr. Howard failed to

---

Force did not propose his removal until 2008—a three-year delay. "The imposition of laches requires both unreasonable delay by the petitioner, and prejudice to the respondent because of the delay." *Hoover v. Dep't of Navy*, 957 F.2d 861, 863 (Fed. Cir. 1992). We review the Board's application of the laches doctrine on appeal for an abuse of discretion. *Gray v. Merit Sys. Prot. Bd.*, No. 2016-1223, 2016 WL 3645106, at *2 (Fed. Cir. July 8, 2016). The AJ disagreed that the delay barred the charge, noting that the Air Force initiated removal proceedings promptly after upper management became aware of Ms. Schneider's allegations, and also found that Mr. Howard was not prejudiced by the delay. We have previously held that a delay of more than three years between the conduct in question and the removal complaint was not unreasonable. *Carr v. Soc. Sec. Admin.*, 185 F.3d 1318, 1327 (Fed. Cir. 1999). We detect no abuse of discretion in the Board's conclusion that a three-year delay here was unreasonable or prejudicial.

disclose several of his outside positions. Air Force Audit Agency Supplement paragraph 5.7.2 requires agency personnel to seek approval prior to acceptance of any outside employment or activity, with or without compensation. J.A. 409. Mr. Howard admitted that he was associated with the National Lending Corporation ("NLC"). In this role, Mr. Howard attempted to help another government employee obtain credit so she could purchase a house, J.A. 977–79, and he did not report this position to management. J.A. 947. Mr. Howard also admitted to being the Head of Operations for his nephew's company called Power Play Sports, even though it never got off the ground, and he was involved with his niece in creating a clothing store called H&S Fashion Apparel. Neither position was officially reported to the Air Force, although several of Mr. Howard's supervisors were aware of his involvement in Power Play Sports.

On appeal, Mr. Howard contends that his minimal involvement with these outside organizations does not constitute substantial evidence that he failed to report outside employment. We disagree. Mr. Howard admits that he participated in these outside businesses and that he did not report them to the Air Force. This is substantial evidence to support the Board's conclusion.

## D.

Finally, Mr. Howard asserts that substantial evidence does not support the aggravating factor of poor performance. The AJ relied on testimony given at the second removal proceeding to support the aggravating factor of low production. Mr. Atkinson, the proposing official, reviewed Mr. Howard's productivity and testified that it was "woefully short." J.A. 1826–27. He noted that Mr. Howard produced two "product equivalents" between 2005 and 2008, far fewer than the normal 12-13 product equivalents the Air Force would expect for that time period. J.A. 1824. The deciding official, Mr. Peterson, testified

that Mr. Howard's production was 83% below agency standards for fiscal years 2005 and 2006. J.A. 1868–69. Mr. Peterson also testified that, after adjusting for the time Mr. Howard spent out of the office due to a workplace injury and his reduced work schedule, Mr. Howard was 50% below the production expectation for fiscal years 2007 and 2008. J.A. 1869–70. In addition, one of Mr. Howard's acting team chiefs testified that during a ten-month period Mr. Howard only completed a single product equivalent, even though he was told to increase his production. J.A. 1925–26.

Mr. Howard also argues on appeal that it was improper to rely on testimony from the first removal proceeding, that his reduced hours due to a work-place injury were not factored into the Air Force's analysis of his performance, and that he received positive performance evaluations during the time period in question. The above-cited evidence, which was relied on by the AJ in reaching her decision, came from testimony during the second removal proceeding, not the first proceeding. Moreover, Mr. Peterson testified that he adjusted his production expectations to account for Mr. Howard's injury. Accordingly, we find that substantial evidence supports the Board's conclusion.

IV.

Mr. Howard also alleges that the charges against him are not related to his job responsibilities such that his removal would promote the "efficiency of the service," as required by 5 U.S.C. § 7513(a). To satisfy this requirement, the Air Force must show by preponderant evidence "that the employee's misconduct is likely to have an adverse impact on the agency's performance of its functions." *Brown v. Dep't of Navy*, 229 F.3d 1356, 1358 (Fed. Cir. 2000) (citing *Mings v. Dep't of Justice*, 813 F.2d 384, 389–90 (Fed. Cir. 1987)). "We give wide berth to agency decisions as to what type of adverse action is necessary to

'promote the efficiency of the service,' provided that the agency's decision bears some nexus to the reason for the adverse action." *Einboden v. Dep't of Navy*, 802 F.3d 1321, 1325–26 (Fed. Cir. 2015) (citing *Doe v. Dep't of Justice*, 565 F.3d 1375, 1379 (Fed. Cir. 2009)). So long as the Board's finding of nexus is supported by substantial evidence, we will uphold it. *Brown*, 229 F.3d at 1358–59.[3]

The Board here noted that the nexus is established when "the grounds for the action relate to either the employee's ability to accomplish his duties satisfactorily or to some other legitimate government interest." J.A. 28. Based on the nature of the charges against Mr. Howard, the Board concluded that this requirement was satisfied. In its second NPR, the Air Force also explained that Mr. Howard's conduct had a "negative impact . . . on the work environment and overall production," and it "compromised the independence of the [Air Force Audit Agency]." J.A. 40. This evidence, together with Mr. Howard's lack of production during the relevant time period, provides substantial evidence to support the Board's conclusion that removing Mr. Howard would promote the efficiency of the service.

CONCLUSION

We have carefully considered Mr. Howard's remaining arguments but find them unpersuasive. Accordingly, we affirm the Board's decision.

**AFFIRMED**

COSTS

No costs.

---

[3] If the Board legally erred in selecting the proper test for analyzing the nexus requirement, that would also require reversal. *Brown*, 229 F.3d at 1358–59. Mr. Howard has not shown a legal error here.