**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 11**

Docket No. AT-0752-11-0620-B-2

**Robert Frederick,**

**Appellant,**

**v.**

**Department of Homeland Security,**

**Agency.**

February 10, 2015

Lisa Freiman Fishberg, Esquire, and Danny C. Onorato, Esquire, Washington, D.C., for the appellant.

David B. Suna, Esquire, New York, New York, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1      The appellant has filed a petition for review of the remand initial decision, which affirmed his indefinite suspension that was effective March 24, 2011.  In his remand initial decision, the administrative judge rejected the appellant's argument that the agency subjected him to double punishment by imposing two indefinite suspensions based on the same incident.  MSPB Docket No. AT-0752-11-0620-B-2 (B-2), Remand Appeal File, Tab 4, Remand Initial Decision (RID) at 3-5.  For the reasons that follow, we GRANT the appellant's petition for review, REVERSE the remand initial decision, and DO NOT

SUSTAIN the appellant's indefinite suspension that was effective March 24, 2011.

## BACKGROUND

¶2      The appellant serves as a Supervisory Immigration Enforcement Agent with the U.S. Immigration and Customs Enforcement.  MSPB Docket No. AT-0752-11-0620-I-1 (I-1), Initial Appeal File (IAF), Tab 1.  The agency issued the appellant a notice of proposed indefinite suspension on March 4, 2010, citing both its Office of Professional Responsibility's (OPR's) internal investigation into allegations that the appellant "allegedly tape record[ed] a conversation in the workplace" and the fact that an arrest warrant had been issued for his arrest based on his alleged violation of Florida's wiretap laws.  MSPB Docket No. AT-0752-11-0620-I-2 (I-2), IAF, Tab 10 at 15.  In its notice of proposed indefinite suspension, the agency expressly disavowed that it was proposing the appellant's indefinite suspension based on reasonable cause to believe that he had committed a crime for which a period of imprisonment could be imposed.  *Id*. at 15-16; *see* 5 U.S.C. § 7513(b)(1).  The agency imposed the appellant's indefinite suspension effective June 10, 2010, and the appellant did not file an appeal with the Board challenging that action.  I-2, IAF, Tab 10 at 21-24.  Although the agency asserted in its letter of decision that it was indefinitely suspending the appellant based on its pending internal investigation, the only factual support cited in the letter of decision was the issuance of the warrant for the appellant's arrest.  *Id*. at 21; *see id*. at 22 (explaining that "[t]he fact that you have been criminally charged with a felony negatively affects our ability to maintain the public trust and has an impact on the Agency's reputation").

¶3      Shortly after the agency imposed the appellant's first indefinite suspension, the Board issued its decision in *Gonzalez v. Department of Homeland Security*, 114 M.S.P.R. 318, ¶¶ 13, 28 (2010), in which it held that an internal agency investigation into alleged employee wrongdoing does not constitute cause

for imposing an indefinite suspension under chapter 75. Thereafter, the agency issued the appellant a second notice of proposed indefinite suspension, this time citing its reasonable belief that the appellant had committed a crime for which a sentence of imprisonment could be imposed. I-1, IAF, Tab 5, Subtab 4h; *see* 5 U.S.C. § 7513(b)(1). Similar to its prior notice and letter of decision imposing the first indefinite suspension, the agency again cited the issuance of the warrant for the appellant's arrest on charges that he had violated Florida's wiretap laws as the supporting specification for the second indefinite suspension.[1] I-1, IAF, Tab 5, Subtab 4h. Although the agency invoked the shortened notice provision for taking an adverse action under 5 U.S.C. § 7513(b)(1), the agency did not issue a letter of decision imposing the appellant's second indefinite suspension until 3 months later. I-1, IAF, Tab 5, Subtab 4a. In its second letter of decision, the agency explained that the appellant would be indefinitely suspended "based solely on the charge and specification outlined in the December 13th, 2010 proposal and no longer based upon the charge and specification sustained in the decision issued . . . on June 17th, 2010." *Id*. On April 2, 2012, the agency returned the appellant to work after the criminal charges against him were dismissed. *Id*. at 8.

¶4    The appellant filed an initial appeal of his second indefinite suspension with the Board arguing that the agency was precluded from imposing that action because the agency had already indefinitely suspended him for the same reason. I-1, IAF, Tab 1.[2] The administrative judge affirmed the second indefinite

---

[1] Unlike its prior notice of proposed indefinite suspension, the agency did not cite its internal investigation into the appellant's conduct in support of its second proposed indefinite suspension. I-1, IAF, Tab 5, Subtab 4h; *see infra* ¶ 8.

[2] The appellant refers to this principle as "administrative double jeopardy." *See, e.g.*, I-1, IAF, Tab 1. Historically, however, the Board has referred to this concept as a bar against imposing a disciplinary or adverse action more than once for the same misconduct or a bar against double punishment. *See Adamek v. U.S. Postal Service*, 13 M.S.P.R. 224, 226 (1982).

suspension, and the appellant filed a petition for review of the administrative judge's initial decision. I-2, IAF, Tab 11, Initial Decision; I-2, Petition for Review (PFR) File, Tab 7, Remand Order at 4. In his petition for review, the appellant requested that he be allowed to challenge his first indefinite suspension, *see* Remand Order at 4, and, without reaching the double punishment issue, the Board forwarded the appellant's request to appeal his first indefinite suspension to the regional office for consideration in the first instance, Remand Order at 5. In doing so, the Board vacated the initial decision affirming the second indefinite suspension and instructed the administrative judge to refrain from reissuing an initial decision addressing the latter indefinite suspension until a final decision had been reached on either the timeliness of the appellant's challenge to his first indefinite suspension or the merits of that appeal. Remand Order at 5.

¶5        Upon receiving the appellant's forwarded appeal challenging his first indefinite suspension, the administrative judge found that the appellant could not establish good cause for his late appeal of that action and he dismissed the appeal as untimely filed. The administrative judge's initial decision became the Board's final decision when the appellant subsequently withdrew his petition for review of that decision. *See* MSPB Docket No. AT-0752-14-0087-I-1, Initial Decision (Dec. 27, 2013); *see also* MSPB Docket No. AT-0752-14-0087-I-1, Final Order (Feb. 25, 2014). The appellant's appeal of his second indefinite suspension then was automatically refiled with the administrative judge, and the administrative judge issued a new initial decision again sustaining the second indefinite suspension, finding that the agency did not subject the appellant to double punishment. RID at 3-5. The appellant has filed a petition for review reasserting that the agency was precluded from imposing the second indefinite suspension, and the agency has filed a response in opposition to the petition for review. B-2, PFR File, Tabs 1, 3.

ANALYSIS

<u>The agency cannot rely upon the same factual specification in effecting separate disciplinary or adverse actions.</u>

¶6    It is a well-established principle of civil service law that an agency may not discipline an employee twice for the same misconduct. *Westbrook v. Department of the Air Force*, 77 M.S.P.R. 149, 155 (1997) (citing *Adamek*, 13 M.S.P.R. at 226). Under this principle, an agency cannot rely upon employee misconduct that formed the basis of a prior disciplinary or adverse action when imposing a subsequent disciplinary or adverse action. *See, e.g.*, *Gartner v. Department of the Army*, 104 M.S.P.R. 463, ¶¶ 5-6 (2007) (declining to consider absences cited in support of a proposed removal that were the basis of a prior letter of reprimand); *Westbrook*, 77 M.S.P.R. at 155 (reversing a 23-day suspension because it relied on the same two charges and underlying facts that were the sole basis for a prior 7-day suspension); *Adamek*, 13 M.S.P.R. at 226 (where an agency has imposed a disciplinary or adverse action because of an employee's misconduct, it is barred from subsequently taking another adverse action for the same reason).

¶7    In his remand initial decision, the administrative judge found that the agency's indefinite suspension actions were based upon different reasons and covered different periods of time and thus did not violate the prohibition against double punishment. RID at 3-4. Upon reviewing the agency's letters of decision imposing the two indefinite suspensions, however, we find that the facts contained within the specifications supporting the agency's decisions are the same, and we conclude that the agency was therefore precluded from imposing the second indefinite suspension. Additionally, we are not convinced by the rationale offered by the administrative judge that the bar against double punishment was not violated in this case because the indefinite suspensions covered separate periods of time. *See* RID at 3-4.

¶8     We provide the following excerpts from the agency's notices of proposed indefinite suspension and letters of decision for clarity. The agency's proposal notice for the appellant's first indefinite suspension states as follows:

> **INDEFINITE SUSPENSION PENDING AGENCY INVESTIGATION**
>
> **Specification:** On or around December 2, 2009, the Office of Professional Responsibility (OPR) was notified of allegations of misconduct committed by you. Specifically, OPR has an open administrative investigation into you allegedly tape recording a conversation in the workplace. On February 17, 2010, a County Court Judge in Broward County, Florida issued a warrant for your arrest based on the affidavit of an OPR investigator about the alleged tape recording investigation. The warrant charged you with violating Florida Statutes 934.03(l)(a) and 934.03(4)(a), (L1) (Interception and disclosure of wire, oral, or electronic communications prohibited). The warrant asserts that on or about July 7, 2009, you intentionally intercepted a wire, oral, or electronic communication of [your supervisor P.C.].

I-2, IAF, Tab 10 at 21 (punctuation and capitalization in original). In its second notice of proposed indefinite suspension, the agency cited the following:

> REASON: REASON TO BELIEVE YOU HAVE COMMITTED A CRIME FOR WHICH A SENTENCE OF IMPRISONMENT MAY BE IMPOSED
>
> **Specification**: On February 17, 2010, a County Court Judge in Broward County, Florida issued a warrant for your arrest. The warrant charged you with violating Florida Statute § 934.03(l)(a) (Interception and disclosure of wire, oral, or electronic communications prohibited). The warrant asserts that on or about July 7, 2009, you intentionally intercepted a wire, oral, or electronic communication of [P.C.]. The warrant was supported by an affidavit of Special Agent [T.D.], which stated that you had covertly tape recorded a meeting with Supervisory Detention and Deportation Officer [P.C.], Assistant Field Office Director [S.T.] and Special Assistant [E.W.] [and several other individuals]. The affidavit stated that these individuals were not aware and did not give you consent to tape record the conversation. Moreover, according to the affidavit, Special Agent [T.D.] obtained possession of the record and after listening to the tape determined that you were the only person who could have tape recorded the conversation. According to Florida

> Statute § 934.03, a person who intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept any wire, oral, or electronic communication shall be guilty of a felony in the third degree and sentenced to a term of imprisonment as prescribed by Florida Statute § 775.082. Under Florida Statute § 775.082, a felony of the third degree carries a term of imprisonment not exceeding 5 years.

I-1, IAF, Tab 5, Subtab 4h (punctuation and capitalization in original). In his letter of decision imposing the second indefinite suspension, the deciding official stated that he had reviewed all of the information contained within the notice of proposed indefinite suspension and he incorporated by reference the factual specification supporting the indefinite suspension. I-1, IAF, Tab 5, Subtab 4a.

¶9    Upon comparing the agency's letters of decision, we find that the only difference between the agency's indefinite suspension actions is the stated reasons for imposing each action, which is to say that the charges the agency relied upon in its letters of decision are different.[3] *Compare* I-2, IAF, Tab 10 at 21-24 (first indefinite suspension based on the pending agency investigation), *with* I-1, IAF, Tab 5, Subtab 4a (second indefinite suspension based upon a reasonable belief of the appellant's commission of a crime). A comparison of the charges an agency brings against an employee, however, is not determinative of whether the appellant has been subjected to double punishment for the same misconduct. Rather, to ascertain whether an employee has been disciplined twice for the same misconduct, the Board must look to the factual specifications supporting the charges levied against an employee, i.e., the underlying "cause"

---

[3] In both of its notices of proposed indefinite suspension and letters of decision, the agency identified a "reason" for proposing and effecting the indefinite suspensions. *See* I-2, IAF, Tab 10 at 15-20, 21-24; I-1, IAF, Tab 5, Subtabs 4a, 4h. We find the agency's proffered "reasons" for taking the adverse actions are analogous to charges. *See, e.g.*, *Walker v. Department of the Army*, 102 M.S.P.R. 474, ¶ 4 (2006) (if an agency chooses to label an action, then it must prove the elements that make up the legal definition of that charge, if any).

relied upon by the agency for taking the disciplinary or adverse action.[4] *See Gonzalez*, 114 M.S.P.R. 318, ¶ 10 ("cause" under section 7513(a) generally connotes some specific act or omission on the employee's part that warrants disciplinary action); *Westbrook*, 77 M.S.P.R. at 155 (explaining that an agency may not discipline an employee twice for the same misconduct). An agency cannot avoid the prohibition against double punishment by relying on different charges in effecting separate disciplinary or adverse actions if the charges are based on the same underlying factual specification.[5] *See Gartner*, 104 M.S.P.R. 463, ¶¶ 2, 6 (excessive absences and failure to follow leave procedures).

¶10     The following cases confirm this principle. In *Gartner*, the Board declined to consider certain dates in a notice of proposed removal which had already served as the factual basis for a prior disciplinary action. *See Gartner*, 104 M.S.P.R. 463, ¶ 6. Similarly, in *Westbrook*, the Board found that an agency could not suspend an employee a second time after it had previously suspended him for 7 days based upon the same factual specifications. *See Westbrook*, 77 M.S.P.R. at 155. Conversely, in *Williams v. Defense Logistics Agency*, 34 M.S.P.R. 54, 58 (1987), the Board explained that related charges must

---

[4] Such factual predicates could be contained in a specification, in narrative format, or a combination thereof. *See Alvarado v. Department of the Air Force*, 97 M.S.P.R. 389, ¶¶ 9-10 (2004).

[5] This situation differs from one in which an agency relies on the same specification in support of two or more separate charges in a single proposed disciplinary or adverse action. In that case, the employee is only subjected to a single disciplinary or adverse action, and the Board's prohibition against double punishment is not triggered. *See, e.g.*, *Shifflett v. Department of Justice*, 98 M.S.P.R. 289, ¶ 5 (2005) (finding that, while an agency may take a single instance of misconduct and prepare charges containing several specifications, the Board will merge charges if they are based on the same conduct and proof of one charge automatically constitutes proof of the other charge). This is analogous to double jeopardy in criminal cases, which prohibits multiple prosecutions for the same offense but does not prohibit prosecutors from filing multiple charges against defendants for the same course of purportedly criminal conduct. *See Blockburger v. United States*, 284 U.S. 299, 300-03 (1932) (the Supreme Court found that "the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not").

"depend on different facts," such as when the agency's charges of absence without leave and falsification were based upon different acts of misconduct—the failure to provide documentation for absences versus statements made in response to a proposed suspension—the imposition of separate disciplinary actions did not amount to double punishment. Finally, in *Nguyen v. Department of Homeland Security*, 737 F.3d 711, 717 (Fed. Cir. 2013), our reviewing court affirmed the Board's determination that the agency did not subject the employee to double punishment when it demoted him based upon the Department of Justice's determination that he was *Giglio* impaired[6] even though his employing agency had previously disciplined him for the underlying misconduct leading to the *Giglio* determination. Relying on this line of Board authority, the court held that the agency did not subject the employee to double punishment because the first adverse action was based on the employee's substantive misconduct and the second adverse action was based on the separate, independent conclusion that the employee was *Giglio* impaired. *Id*. (holding that the agency did not impliedly discipline the appellant a second time for the same reason cited in its prior disciplinary action).

¶11    Based on the foregoing, we find that a comparison of the charges the agency relied upon in its letters of decision does not resolve whether the appellant was subjected to double punishment. *See, e.g.*, B-2, PFR File, Tab 3 at 9 (the agency's argument that the indefinite suspension actions were imposed for

---

[6] Under *Giglio v. United States*, 405 U.S. 150 (1972), investigative agencies must turn over to prosecutors, as early as possible in a case, any potential impeachment evidence concerning the agents involved in the case. *Bennett v. Department of Justice*, 119 M.S.P.R. 685, ¶ 3 n.2 (2013). The prosecutor will then exercise his discretion regarding whether the impeachment evidence must be turned over to the defense. *Id*. A "*Giglio*-impaired" agent is one against whom there is potential impeachment evidence that would render the agent's testimony of marginal value in a case. Thus, a case that depends primarily on the testimony of a *Giglio*-impaired witness is at risk. *Id*.

different reasons)[7]; RID at 3-4. Instead, we find that because the factual specifications relied upon by the agency in support of both adverse actions are substantially similar—the issuance of a warrant for the appellant's arrest in February 2010 for intentionally intercepting a wire, oral, or electronic communication of supervisor P.C. on or about July 7, 2009—the agency effected two adverse actions for the same reason and therefore subjected the appellant to double punishment.[8] *See Westbrook*, 77 M.S.P.R. at 155; *Adamek*, 13 M.S.P.R. at 226.

¶12      In reaching our conclusion, we acknowledge that the agency cited both its pending internal investigation and the issuance of the warrant for the appellant's arrest in the specification supporting its first notice of proposed indefinite suspension and that it also expressly disclaimed any reliance on the reasonable cause provision of 5 U.S.C. § 7513(b)(1) in reaching its decision regarding that suspension. *See* I-2, IAF, Tab 10 at 15-20. In his letter of decision imposing the first indefinite suspension, however, the deciding official *only* cited to the issuance of the warrant for the appellant's arrest, *id.* at 21-24, and, in his letter of decision imposing the second indefinite suspension, the deciding official similarly cited the fact that the appellant had been criminally charged with a

---

[7] In opposition to the appellant's petition for review, the agency relies on *Wigen v. U.S. Postal Service*, 58 M.S.P.R. 381, 384 (1993). Similar to the decisions discussed above, however, in *Wigen*, the Board found that the agency did not violate the bar against double punishment when it brought two charges stemming from two acts of misconduct. *Wigen*, 58 M.S.P.R. at 385 (explaining that the employee was first disciplined for his unscheduled absence and separately disciplined for falsifying medical documentation in connection with his unscheduled absence for which he was previously disciplined). Differing from *Wigen*, however, the agency in this case relied upon essentially the same specification in support of both indefinite suspensions; *Wigen* thus does not support sustaining the second indefinite suspension.

[8] Any affect *Gonzalez* might have on the validity of the agency's first indefinite suspension does not alter our finding that the agency took two adverse actions against the appellant based on the same factual specification. Because the appellant did not file a timely appeal challenging the merits of the agency's first indefinite suspension action, the merits of that action are not properly before the Board.

felony for covertly taping a conversation with P.C., I-1, IAF, Tab 5, Subtab 4a; *see supra* ¶ 8. The Board will review only the reasoning relied upon by the agency in support of its decision to impose an adverse action. *See Rodriguez v. Department of Homeland Security*, [117 M.S.P.R. 188](#), ¶ 9 (2011). We find that, once the agency cited and relied upon the issuance of the warrant for the appellant's arrest in its first decision to impose an indefinite suspension, it was precluded from citing and relying upon this same factual specification a second time even though the charge relied upon by the agency in the second indefinite suspension differed from the charge supporting the first indefinite suspension. *See Gartner*, [104 M.S.P.R. 463](#), ¶¶ 5-6; *Westbrook*, 77 M.S.P.R. at 155; *Adamek*, 13 M.S.P.R. at 226.

¶13    The fact that the appellant's indefinite suspensions covered different periods of time does not change our conclusion that the agency subjected the appellant to double punishment. In reaching his decision below, the administrative judge relied on the fact that the periods of time the appellant was placed on indefinite suspension ran consecutively and did not overlap. *See* RID at 4 ("The 1st Indefinite Suspension lasted from June 10, 2010 until March 26, 2011, when it ended. The 2nd Indefinite Suspension then covered the period from March 26, 2011 to the present."). Whether the appellant's indefinite suspension periods overlapped, however, is not relevant to whether the agency subjected the appellant to multiple disciplinary or adverse actions based upon the same factual specification. Regardless of when, or for how long, the appellant was penalized, both of the disciplinary actions imposed by the agency were based upon essentially the same factual specification, i.e., the issuance of the warrant for the appellant's arrest, and the agency was precluded from taking a second adverse action based on the same factual specification cited in support of its first

indefinite suspension.[9]   *See Gartner*, 104 M.S.P.R. 463, ¶ 5; *Westbrook*, 77 M.S.P.R. at 155; *Adamek*, 13 M.S.P.R. at 226.

¶14        In rendering our decision, we emphasize that an agency is not precluded from indefinitely suspending an employee based upon reasonable cause to believe he has committed a crime for which a sentence of imprisonment could be imposed and thereafter proposing to remove him based upon either his subsequent criminal conviction or his underlying misconduct. *See Campbell v. Defense Logistics Agency*, 31 M.S.P.R. 691, 694-95 (1986) (explaining that based upon the resolution of the criminal proceedings, the agency must either promptly return the employee to duty or proceed expeditiously to take further administrative action), *aff'd*, 833 F.2d 1024 (Fed. Cir. 1987) (Table).   Our cases addressing such situations emphasize that the cause for an employee's indefinite suspension is the reasonable belief that the employee has committed a crime for which a sentence of imprisonment is possible and that the cause for removing him from federal service thereafter is either proof of his subsequent criminal conviction or proof that he engaged in the substantive misconduct. *See Dalton v. Department of Justice*, 66 M.S.P.R. 429, 435-36 (1995) (the eventual resolution of the criminal charge is irrelevant to whether the indefinite suspension was properly imposed); *see also Rittgers v. Department of the Army*, 117 M.S.P.R. 182, ¶ 12 (2011) (an

---

[9] Our analysis would be no different if the agency, for example, suspended the appellant for 7 days in June of 2010, and then suspended him for 14 days in March of 2011 based on the same factual specification.  Similar to the instant case, the fact that the appellant would have been suspended for different periods of time that did not overlap would not have avoided the prohibition against double punishment.  Our conclusion in this case would be different, however, if the agency cited different periods of time addressing different employee misconduct in its factual specifications supporting each of its adverse actions. *See, e.g.*, *Bowen v. Department of the Navy*, 112 M.S.P.R. 607, ¶ 13 (2009) (finding that a letter of reprimand for misconduct committed on March 6, 2008, was distinguishable from a removal proposal based on insubordinate conduct on different dates in February and March of 2008), *aff'd*, 402 F. App'x 521 (Fed. Cir. 2010).   The agency, however, did not rely on differing factual specifications in imposing the indefinite suspensions.

indefinite suspension based on the crime exception does not generally involve a determination on the merits of the alleged misconduct or any criminal charge); *Rawls v. U.S. Postal Service*, [98 M.S.P.R. 98](), ¶ 13 (2004) (citing *Engdahl v. Department of the Navy*, [900 F.2d 1572](), 1578 (Fed. Cir. 1990) ("the [agency] acted within reasonable time periods in considering, proposing, and finalizing his removal" after the appellant pled guilty)), *aff'd*, 179 F. App'x 693 (Fed. Cir. 2006).

¶15        Furthermore, our decision in this matter does not undermine the longstanding practice of an agency citing to an employee's past discipline as an aggravating factor in determining the reasonableness of a penalty under *Douglas v. Veterans Administration*, [5 M.S.P.R. 280]() (1981). *See Adamek*, 13 M.S.P.R. at 226 n.\* (an agency is not barred from using the same action in determining the severity of the penalty to be imposed in a subsequently-initiated adverse action based on a different incident of misconduct). Additionally, nothing in our decision should be read as preventing an agency from cancelling a prior adverse action and reissuing the adverse action in "an entirely new and constitutionally correct" proceeding. *Seeler v. Department of the Interior*, [118 M.S.P.R. 192](), ¶ 10 (2012) (quoting *Ward v. U.S. Postal Service*, [634 F.3d 1274](), 1279 (Fed Cir. 2011)). Under these circumstances, the bar against double punishment is not violated because the agency has rescinded its prior adverse action, made the employee whole, and commenced an "entirely new" constitutionally correct proceeding, thus negating the first disciplinary action.[10] *See Ward*, 634 F.3d at 1279.

---

[10] We reject the agency's argument that it rescinded the first indefinite suspension upon issuing the letter of decision imposing the second indefinite suspension. *See* B-2, PFR File, Tab 3 at 8. The record reflects that although the agency ended the first indefinite suspension when it imposed the second, the agency never made the appellant whole for the period of time covering the first indefinite suspension. *E.g.*, B-2, PFR File, Tab 1 at 11. As explained by the U.S. Court of Appeals for the Federal Circuit in *Ward*, in order

¶16     Based on the foregoing, we find that the agency relied upon the same factual predicate in support of both decisions to indefinitely suspend the appellant. Because the agency had already indefinitely suspended the appellant on June 10, 2010, based upon the issuance of a warrant for his arrest, we find that the bar against double punishment precluded the agency from imposing a second indefinite suspension based upon this same factual specification. The appellant's second indefinite suspension action is therefore NOT SUSTAINED.

ORDER

¶17     We ORDER the agency to CANCEL the appellant's indefinite suspension effective March 24, 2011. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶18     We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due, and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶19     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and to describe the actions it took to carry out the Board's Order. The appellant, if not notified, should ask the agency about its progress. *See* 5 C.F.R. § 1201.181(b).

---

to reissue a previously-imposed disciplinary or adverse action, the agency must completely cancel its prior action. *See Ward*, 634 F.3d at 1279.

¶20     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision in this appeal if the appellant believes that the agency did not fully carry out the Board's Order. The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency. 5 C.F.R. § 1201.182(a).

¶21     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached. The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

¶22     This is the final decision of the Merit Systems Protection Board in this appeal. Title 5 of the Code of Federal Regulations, section 1201.113(c) (5 C.F.R. § 1201.113(c)).

<u>NOTICE TO THE APPELLANT</u>
<u>REGARDING YOUR RIGHT TO REQUEST</u>
<u>ATTORNEY FEES AND COSTS</u>

You may be entitled to be paid by the agency for your reasonable attorney fees and costs. To be paid, you must meet the requirements set out at Title 5 of the United States Code (U.S.C.), sections 7701(g), 1221(g), 1214(g) or 3330c(b); or 38 U.S.C. § 4324(c)(4). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the United States Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems

Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

FOR THE BOARD:

_____
William D. Spencer
Clerk of the Board
Washington, D.C.

|  | **DFAS CHECKLIST**<br><br>**INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |
|---|---|

AS CHECKLIST: INFORMATION REQUIRED BY IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

   a. Outside earnings with copies of W2's or statement from employer.
   b. Statement that employee was ready, willing and able to work during the period.
   c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.