# United States Court of Appeals for the Federal Circuit

---

**THOMAS O. WARD,**
*Petitioner,*

v.

**UNITED STATES POSTAL SERVICE,**
*Respondent.*

---

2010-3021

---

Petition for review of the Merit Systems Protection Board in case no. PH0752090126-I-1.

---

Decided: February 17, 2011

---

MATTHEW J. DOWD, Wiley Rein LLP, of Washington, DC, argued for petitioner. With him on the brief was ROBERT J. SCHEFFEL. Of counsel on the brief was JOSEPH CHESTER, Caplan & Chester, of Pittsburgh, Pennsylvania.

MATTHEW H. SOLOMSON, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KENNETH M. DINTZER, Assistant Director. Of counsel was

MICHAEL J. ELSTON, Appellate Counsel, Office of the General Counsel, United States Postal Service, of Washington, DC.

———————————

Before RADER, *Chief Judge*, DYK and PROST, *Circuit Judges*.

PROST, *Circuit Judge*.

Petitioner Thomas O. Ward ("Ward") petitions for review of the final decision of the Merit Systems Protection Board ("Board") affirming the U.S. Postal Service's ("Agency's") decision to remove him from employment. *Ward v. U.S. Postal Serv.*, No. PH0752090126-I-1 (M.S.P.B. Aug. 31, 2009) ("*Final Decision*"). The Board recognized that the deciding official improperly considered Ward's alleged past instances of misconduct, which were conveyed to the deciding official through ex parte communications and were not included in Ward's Notice of Proposed Removal. The Board, however, erred in failing to consider whether this procedural error was harmful and in failing to address the due process issues arising out of the ex parte communications. Accordingly, we vacate and remand for further proceedings consistent with this opinion.

BACKGROUND

On August 19, 2008, Ward, a preference eligible Maintenance Mechanic for the Agency, was involved in an incident with a supervisor in which he shouted at her, acted in a manner that she perceived as threatening, and disobeyed her instructions to remain in her office ("August 19, 2008 Incident"). On August 29, 2008, the Agency issued a Notice of Proposed Removal, which proposed

Ward's removal from employment with the Agency based on a single charge of improper conduct arising out of the August 19, 2008 Incident. The Notice of Proposed Removal mentioned only the August 19, 2008 Incident as grounds for Ward's removal; it did not reference any other misconduct by Ward.

On November 5, 2008, Dan O'Hara, the deciding official ("Deciding Official"), issued a Letter of Decision, finding that the improper conduct charge was fully supported by the evidence and that removal was warranted in light of the relevant *Douglas* factors. *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313 (1981) (discussing factors that supervisors must consider in determining an appropriate penalty to impose for an act of employee misconduct). Ward's removal from the Agency was effective November 7, 2008.

On December 5, 2008, Ward appealed the Deciding Official's decision to the Board. At a hearing before the administrative judge on February 10, 2009, the Deciding Official testified that before making his decision, he not only reviewed the Agency's investigative documents regarding the August 19, 2008 Incident but also spoke with three supervisors and one manager who discussed prior incidents in which Ward exhibited "loud, belligerent, [and] intimidating behavior." J.A. 138-39; *see* J.A. 135; J.A. 145-46. The Deciding Official admitted that Ward's "recurring pattern of behavior" affected his analysis of two *Douglas* factors, lowering the Deciding Official's confidence in Ward's ability to satisfactorily perform his duties and convincing the Deciding Official that Ward showed no potential for rehabilitation. J.A. 137; J.A. 140. Specifically, the Deciding Official testified that "after speaking with [the supervisor involved in the August 19, 2008 Incident] and speaking with the other people as to

the pattern of conduct that [he had] heard over the years," he had little confidence that Ward could perform at a satisfactory level. J.A. 137. Further, in response to a question regarding Ward's potential for rehabilitation, the Deciding Official testified, "[W]ith the pattern, the recurring pattern of behavior that [he] discovered in . . . [Ward's] work record, [he] just didn't see how . . . any kind of letter, warning, or suspension was going to mitigate any of that." J.A. 140. Ward's counsel objected to the Deciding Official's testimony regarding Ward's past misconduct on the grounds that Ward "wasn't given any opportunity to explain anything about any prior conduct" before his removal. J.A. 137-38. The administrative judge, however, allowed the testimony, finding it relevant to the Deciding Official's penalty determination. J.A. 137-38.

On March 16, 2009, the administrative judge issued an initial decision that sustained the improper conduct charge and affirmed the Agency's removal of Ward. The administrative judge found that the Deciding Official properly considered Ward's alleged past instances of misconduct because they "are precisely the types of non-disciplinary counselings a deciding official may use to enhance a penalty." J.A. 27. The administrative judge further determined that the discussions were not improper ex parte communications because they were not "of the type that resulted in undue pressure upon [the Deciding Official] to rule in a particular manner." J.A. 27.

Ward petitioned the Board for review of the administrative judge's initial decision, arguing that the Agency failed to prove the improper conduct charge and that the penalty of removal was erroneous because, inter alia, the Deciding Official improperly considered alleged past misconduct that was not included in the Notice of Pro-

posed Removal. *Final Decision* at 3-4. On August 31, 2009, the Board issued a final decision, which granted Ward's petition for review as to the Agency's penalty determination yet upheld the imposed penalty of removal. *Id.* at 1, 3, 10. The Board found that the administrative judge, in analyzing the Deciding Official's consideration of Ward's alleged past misconduct, erred in two respects. *Id.* at 5. First, the Board concluded that the administrative judge erred in finding that the Deciding Official was entitled to consider Ward's alleged past misconduct in the penalty analysis. *Id.* The Board found that consideration of the alleged prior incidents as aggravating factors favoring an enhanced penalty was improper because the incidents were not included in the Notice of Proposed Removal and were instead mentioned for the first time during Ward's appeal to the Board. *Id.* Second, the Board determined that the administrative judge erred in analyzing whether the Deciding Official's discussions regarding this alleged prior misconduct constituted improper ex parte communications. *Id.* The Board reasoned that "[w]here an ex parte communication does not relate to the charge itself, but relates instead to the penalty, the Board has not considered such error to be [a] denial of due process of law . . . ." *Id.* at 5-6. The Board explained that, in these circumstances, it would "remedy the error by doing its own analysis of the penalty factors" to determine whether "removal is within the bounds of reasonableness, considering the pertinent factors other than [Ward's] past work record." *Id.* at 6. Upon independently reviewing the *Douglas* factors, the Board concluded that the penalty of removal "does not exceed the tolerable limits of reasonableness." *Id.* at 6-10. Therefore, despite finding that the Deciding Official erroneously considered Ward's alleged prior misconduct and that the administrative judge erred in her penalty analysis, the Board sustained Ward's removal from the Agency. *Id.* at 4-10.

Ward timely petitioned for review of the Board's final decision in this court.  We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

"Our review of Board decisions is limited.  We may only reverse a Board decision if we find the decision to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; obtained without procedures required by law; or unsupported by substantial evidence." *Kahn v. Dep't of Justice*, 618 F.3d 1306, 1312 (Fed. Cir. 2010) (citing 5 U.S.C. § 7703(c)).  We "must reverse a decision of the Board if it . . . is not in accordance with the requirements of the Due Process Clause of the Fifth Amendment or any other constitutional provision." *Blank v. Dep't of the Army*, 247 F.3d 1225, 1228 (Fed. Cir. 2001).

The removal proceedings in this case present serious due process concerns and a violation of Agency procedure, both of which the Board erred in addressing.  Ward's Notice of Proposed Removal proposed his removal from the Agency based solely on his conduct during the August 19, 2008 Incident.  The Deciding Official, however, proceeded to have ex parte communications with three supervisors and one manager from the Agency during which he learned of several alleged past instances of misconduct by Ward.  Although these prior incidents were not referenced in Ward's Notice of Proposed Removal, leaving Ward entirely unaware that such incidents would be considered as grounds for his removal, the Deciding Official later admitted, in his testimony before the administrative judge, that these incidents had influenced his decision that removal was warranted.  Specifically, the Deciding Official testified that Ward's "recurring pattern" of misconduct impacted his analysis of at least two *Doug-*

*las* factors, as it gave the Deciding Official little confidence in Ward's ability to satisfactorily perform his duties and convinced the Deciding Official that Ward showed no potential for rehabilitation. J.A. 137; J.A. 140.

At worst, the Deciding Official's ex parte communications violated Ward's due process rights, automatically entitling him to a new removal proceeding free from any violation of his constitutional rights. The Board, however, erred in failing to analyze the due process issues presented in this case. At a minimum, the Deciding Official's consideration of alleged past misconduct that was not included in the Notice of Proposed Removal violated Agency procedure, requiring a harmless error analysis. The Board properly recognized this procedural error. Yet the Board erred in concluding that it could "remedy the error" by performing its own penalty analysis in which it considered whether, in its view, the removal penalty was "within the tolerable limits of reasonableness." *Final Decision* at 6, 10. We address the due process issues and the procedural error in turn.[1]

---

[1] At oral argument, the government repeatedly argued that Ward did not raise the issue of the Agency's improper consideration of Ward's alleged past misconduct. Oral Arg. at 14:10-23, 16:25-59, 18:17-22, 29:35-30:01, 30:31-42, *available at* http://oralarguments.cafc.uscourts.gov/Audiomp3/2010-3021.MP3. It is true that Ward did not fully address the implications of this error. Yet Ward's brief quotes the Deciding Official's testimony before the administrative judge, wherein he admitted that Ward's alleged pattern of misconduct influenced his penalty determination, and argues that the Deciding Official's penalty recommendation was erroneous because it was based on this improper evidence of past misconduct in violation of Agency procedure and due process. Pet'r's Br. 52-53. In addition to this reference to the error, there is no question that a

A

First, the Board erred in failing to address the due process concerns arising out of the Deciding Official's ex parte communications regarding Ward's alleged prior instances of misconduct, which were not mentioned in Ward's Notice of Proposed Removal or otherwise referenced in the proceeding until the Deciding Official testified before the administrative judge that these incidents played a role in his penalty determination. Where a public employee has a property interest in continued

central focus of Ward's appeal was the impropriety of the imposed penalty of removal and the penalty analysis. *See* Pet'r's Br. 4, 39-54; Pet'r's Reply Br. 21-30. Therefore, to the extent that the legal implications of the Agency's improper consideration of Ward's alleged prior misconduct in its penalty analysis was "not discretely identified in the parties' briefs," we conclude that we may resolve the case on this issue because it is "inextricably linked to, and is thus 'fairly included' within, the questions presented." *City of Sherrill, N.Y. v. Oneida Indian Nation of N.Y.*, 544 U.S. 197, 214 n.8 (2005); *see Long Island Sav. Bank, FSB, v. United States*, 503 F.3d 1234, 1244 (Fed. Cir. 2007).

Further, the court notes that Ward's counsel objected to the Deciding Official's testimony regarding Ward's alleged prior misconduct during the hearing before the administrative judge, the first time such misconduct was referenced in the proceeding, and Ward raised the issue in his petition for review before the Board. *See Final Decision* at 3-4; J.A. 137-38. The issue is therefore explicitly addressed in both the administrative judge's initial decision and the Board's final decision. *See Final Decision* at 5-6; J.A. 27. Thus, although not thoroughly briefed on appeal, the issue has been raised and addressed throughout the proceeding. Moreover, after the issue was raised at oral argument, the government did not seek an opportunity for further briefing. Under these circumstances, it is well within our discretion to decide the issue.

employment, the Due Process Clause of the Fifth Amendment requires that the employee be afforded notice "both of the charges and of the employer's evidence" and an "opportunity to respond" before being removed from employment. *Stone v. FDIC*, 179 F.3d 1368, 1374-76 (Fed. Cir. 1999). In *Stone v. FDIC*, we established a standard for determining whether ex parte communications with a deciding official in the course of a public employee's removal proceeding violate the employee's due process rights. We recognized that "not every *ex parte* communication is a procedural defect so substantial and likely to cause prejudice that it undermines . . . due process." *Id.* at 1376-77. Instead, "only *ex parte* communications that introduce new and material information to the deciding official" violate due process. *Id.* at 1377. We emphasized that the ultimate inquiry is whether the ex parte communication is "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Blank*, 247 F.3d at 1229; *Stone*, 179 F.3d at 1377.

Given the seriousness of a due process violation, we made clear that if the deciding official received "new and material information" by means of ex parte communications, thereby violating the employee's due process rights, the "violation is not subject to the harmless error test." *Stone*, 137 F.3d at 1377. Instead, the employee is automatically entitled to an "entirely new" and "constitutionally correct" removal proceeding. *Id.*

Here, the Board did not analyze the Deciding Official's ex parte communications under the *Stone* framework to determine whether Ward's due process rights were violated. Rather, the Board held that "[w]here an ex parte communication does not relate to the charge itself, but relates instead to the penalty, the Board has not

considered such error to be [a] denial of due process of law to be analyzed under the factors set forth in *Stone*." *Final Decision* at 5-6; *see Biniak v. Soc. Sec. Admin.*, 90 M.S.P.R. 682, 686-87 (2002). We reject as arbitrary and unsupportable the Board's distinction between ex parte communications relating to the charge itself and ex parte communications relating to the penalty. Indeed, if ex parte communications influence a deciding official's penalty determination, contributing to the enhancement of the penalty to removal, the communications impact the employee's property interest in continued employment no less than if they relate to the underlying charge. Moreover, the distinction has no support in our case law. *Stone*, referencing Supreme Court precedent, emphasized the importance of giving an employee notice of any aggravating factors supporting an enhanced penalty as well as a meaningful opportunity to address "whether the level of penalty to be imposed is appropriate." 179 F.3d at 1376. In our view, *Stone* thus makes clear that ex parte communications introducing information material to the penalty run astray of the due process requirements of notice and an opportunity to be heard. Ex parte communications that introduce "new and material information," whether material to the merits of the underlying charge or material to the penalty to be imposed, violate due process. There is no constitutionally relevant distinction between ex parte communications relating to the underlying charge and those relating to the penalty.

Accordingly, we remand this case to the Board to analyze, in the first instance, whether the ex parte communications between the Deciding Official and various Agency supervisors and managers undermined Ward's procedural due process rights under *Stone*. "Specifically, the Board must analyze whether the *ex parte* communications in this case introduced new and material information to the

[D]eciding [O]fficial."[2]   *Id.*   If the Board finds that the communications did introduce new and material information in violation of Ward's due process rights, Ward must be afforded a "constitutionally correct removal procedure." *Id.* The Board may not excuse the constitutional violation as harmless error.   *Id.* at 1372-77 (remanding to the Board for determination of whether ex parte communications violated the employee's due process rights despite deciding official's affidavit stating that "he would have

---

[2]   We note that the administrative judge found that the ex parte communications at issue in this case did not violate Ward's due process rights because they were not "of the type that resulted in undue pressure upon [the Deciding Official] to rule in a particular manner."  J.A. 27. In *Stone*, we held that "whether the *ex parte* communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner" is a relevant factor in determining whether the ex parte communications violated due process. *Blank*, 247 F.3d at 1229; *Stone*, 179 F.3d at 1377.  This, however, is only one of several enumerated factors and is not the ultimate inquiry in the *Stone* analysis.  *See Blank*, 247 F.3d at 1229; *Stone*, 179 F.3d at 1377.  The administrative judge's finding on this point is therefore not a sufficient basis on which to conclude that the Deciding Official's ex parte communications did not violate Ward's due process rights.

Further, the court notes that if the ex parte communications "were of the type likely to result in undue pressure upon the deciding official," this may well make it more likely that the employee was deprived of due process.  Yet the lack of such undue pressure may be less relevant to determining whether the ex parte communications deprived the employee of due process where, as here, the Deciding Official admits that the ex parte communications influenced his penalty determination.  *See* J.A. 137; J.A. 140.  Under these circumstances, the materiality of the ex parte communications appears to be self-evident from the Deciding Official's admission.

concluded that [the employee] should be removed whether or not he had [received the ex parte communications].").

B

Even if the Board, on remand, concludes that the ex parte communications did not rise to the level of a due process violation, the Agency's consideration of Ward's alleged past instances of misconduct, without referencing these incidents in the Notice of Proposed Removal, was still a procedural error. As *Stone* recognized, "the Due Process Clause only provides the minimum process to which a public employee is entitled prior to removal." 179 F.3d at 1377-78. "Public employees are, of course, entitled to . . . other procedural protections . . . afforded them by statute, regulation, or agency procedure." *Id.* at 1378. Section 752.404(f) of 5 C.F.R., the regulation governing Agency procedure for removal of qualified employees, including Ward, provides that "[i]n arriving at its decision, the agency shall not consider any reasons for action other than those specified in the notice of proposed action." *See Douglas*, 5 M.S.P.B. at 331 & n.65; 5 C.F.R. § 752.401(c). As such, it is a procedural error, in violation of 5 C.F.R. § 752.404(f), for "an agency to rely on matters affecting the penalty it imposes without including those matters in the proposal notice." *Coleman v. Dep't of Def.*, 100 M.S.P.R. 574, 579 (2005); *see Turner v. U.S. Postal Serv.*, 85 M.S.P.R. 565, 569 (2000); *Westmoreland v. Dep't of Veterans Affairs*, 83 M.S.P.R. 625, 628 (1999); 5 C.F.R. § 752.404(f). Thus, the Board in this case properly found that the Deciding Official erred in considering Ward's alleged prior incidents of misconduct, which were not included in the Notice of Proposed Removal, as grounds for imposing the penalty of removal. *Final Decision* at 5.

Despite recognizing this procedural error, the Board erred in concluding that it could "remedy the error" by performing an independent analysis of the *Douglas* factors to determine whether "removal is within the bounds

of reasonableness."[3]  *Id.* at 6.  Instead, the Board was required to run a harmless error analysis to determine whether the procedural error required reversal.  The Civil Service Reform Act provides that the Board may not sustain an agency decision if the employee "shows harmful error in the application of the agency's procedures in arriving at such decision."  5 U.S.C. § 7701(c)(2)(A); *Diaz v. Dep't of the Air Force*, 63 F.3d 1107, 1109 (Fed. Cir. 1995); *Shaw v. U.S. Postal Serv.*, 697 F.2d 1078, 1080 (Fed. Cir. 1983); *see* 5 C.F.R. § 1201.56(b)(1).  The Board's regulations define "harmful error" as an "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error."  5 C.F.R. § 1201.56(c)(3); *Shaw*, 697 F.2d at 1080.  We have repeatedly held employees to this burden to show harmful error in an agency's procedure in order to establish reversible procedural error.  *Diaz*, 63 F.3d at 1109 ("We have previously held that an employee chal-

---

[3]    At oral argument, the government cited *LaChance v. Merit Systems Protection Board*, 147 F.3d 1367, 1374 (Fed. Cir. 1998), to defend the Board's independent penalty analysis.  *Final Decision* at 6; Oral Argument at 17:00–38; 21:05–21:21.  The issue addressed in *LaChance*, however, is distinct from that presented in this case, namely, the analysis required where the Board finds that an agency violated its own procedure in reaching its decision.  In related circumstances, we have held that a reasonableness inquiry is not sufficient.  In addition to determining "whether the penalty was reasonable . . . if there is 'some indication that the agency would have regarded the sustained charges as insufficient to justify the penalty imposed,' the Board must remand the case to the agency for redetermination of the appropriate penalty in the first instance."  *Chambers v. Dep't of the Interior*, 602 F.3d 1370, 1381 (Fed. Cir. 2010) (quoting *Guise v. Dep't of Justice*, 330 F.3d 1376, 1381 (Fed. Cir. 2003)).

lenging an agency action has the burden to prove that a violation of a statutory procedure was harmful."); *Handy v. U.S. Postal Serv.*, 754 F.2d 335, 337-38 (Fed. Cir. 1985) ("It is insufficient simply to show that a statutory procedure was not followed at the agency level. Harmful error must be shown."); *Shaw*, 697 F.2d at 1080-81.

Arguably, the Board's independent analysis of the *Douglas* factors to determine whether "removal is within the bounds of reasonableness" was the Board's attempt to perform a harmless error analysis. *Final Decision* at 6. The focus of a harmless error analysis, however, is the *agency* and whether the *agency* is likely to have reached a different conclusion in the absence of the procedural error. 5 C.F.R. § 1201.56(c)(3); *see Diaz*, 63 F.3d at 1109 ("[Petitioner] did not argue or submit any evidence that showed that the agency's procedural violation affected the outcome of the agency's decision or was in any way harmful. Therefore, the Board properly declined to reverse the agency's decision to remove [Petitioner]."); *Handy*, 754 F.2d at 338 ("Having failed to show that in some way [that the absence of the procedural error] would have possibly affected the agency's decision, petitioner is not entitled to prevail."); *Shaw*, 697 F.2d at 1080-81. In contrast, the Board's "own analysis" of Ward's penalty considered whether, in its view, the imposed penalty did "not exceed the tolerable limits of reasonableness." *Final Decision* at 6, 10. Thus, the Board's independent analysis of the *Douglas* factors did not constitute a proper harmless error analysis.

Accordingly, on remand, if the Board determines that the Deciding Official's ex parte communications did not violate Ward's due process rights, the Board must consider whether the Agency's procedural error, in considering Ward's alleged prior instances of misconduct without

including these incidents in the Notice of Proposed Removal, constituted harmful error. Specifically, here as in other cases, the Board must analyze whether "there is some indication that the agency would have regarded the sustained charges as insufficient to justify the penalty imposed."[4] *Chambers*, 602 F.3d at 1381 (internal quotation omitted). If there is such an indication, the matter must be remanded "to the agency for redetermination of the appropriate penalty in the first instance." *Id.*

## CONCLUSION

In light of the above analysis, we vacate the Board's decision and remand the case for further proceedings consistent with this opinion. On remand, the Board must first analyze whether the Deciding Official's ex parte communications violated Ward's due process rights by introducing new and material information. If the Board finds that the ex parte communications did introduce new and material information, Ward must be afforded a new removal proceeding free from such violations of his consti-

---

[4] Although we take no position regarding whether the Agency's error was harmful, we note that the Deciding Official did not testify that he would have reached the same penalty determination without considering Ward's prior misconduct. *Cf. Coleman*, 100 M.S.P.R. at 579. Instead, the Deciding Official expressly admitted that Ward's alleged "recurring pattern of behavior" influenced his determination that two *Douglas* factors weighed in favor of removal, as it lowered the Deciding Official's confidence in Ward's ability to perform his duties and convinced the Deciding Official that Ward showed no potential for rehabilitation. J.A. 137; J.A. 140; *see Turner*, 85 M.S.P.R. at 569. The Deciding Official also testified that several other *Douglas* factors weighed against removal.

tutional rights. If, however, the Board finds that Ward's due process rights were not violated because the ex parte communications did not introduce new and material information, the Board must analyze whether the Agency's procedural error, considering Ward's alleged prior misconduct that was not included in his Notice of Proposed Removal, was harmful error.

**VACATED AND REMANDED**