# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| DWIGHT V. LUNDY,<br>　　　　　　Appellant,<br><br>　　　　v.<br><br>DEPARTMENT OF HOMELAND<br>　SECURITY,<br>　　　　　　Agency. | DOCKET NUMBER<br>DA-0752-13-4522-I-1<br><br><br>DATE: February 19, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Robert Autrey, Washington, D.C., for the appellant.

Olamide Famuyiwa, Washington, D.C., for the agency.

### BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

### FINAL ORDER

¶1　　The agency has filed a petition for review of the initial decision, which mitigated the appellant's removal to a 45-day suspension. For the reasons discussed below, we DENY the petition for review, VACATE the initial decision, and ORDER the agency to cancel the appellant's removal.

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

¶2     The appellant worked as a Materials Handler Leader for the agency's Federal Emergency Management Agency (FEMA) at a distribution center in Fort Worth, Texas. Initial Appeal File (IAF), Tab 17 at 109. In May 2010, the agency's Office of Inspector General (OIG) began an investigation into allegations that another employee was stealing items from the distribution center for his personal use. *Id.* at 78. During the investigation, the employee informed the OIG that the appellant gave him permission to take items home from the distribution center for personal use including large plastic bags filled with rolls of toilet paper. *Id.* The OIG interviewed the appellant who provided a written sworn statement admitting to removing items. *Id.* at 28-29, 31-34. The appellant allowed a search of his residence and the OIG discovered evidence, including tissue, soap, hand sanitizer, toilet paper and paper towels. *Id.* at 30, 35. The OIG completed its investigation in 2011, and provided its findings to FEMA. *Id.* at 83.

¶3     Also in 2010, an anonymous note was left under a door of the information technology server room alleging that two employees of the center, including the appellant, were accessing explicit web sites from their work computers. *Id.* at 18-19. The agency conducted an investigation into this allegation during 2010 and 2011. *Id.* at 6-16.

¶4     In March 2012, the agency placed the appellant on administrative leave. IAF, Tab 16 at 107. On April 1, 2013, the agency proposed to remove the appellant based on three charges: (1) unauthorized removal of government property—ten specifications; (2) unauthorized possession of government property—nine specifications; and (3) misuse of government computer—two specifications. IAF, Tab 16 at 109-11. Accompanying the notice of proposed removal was the proposing official's Douglas factors worksheet which identified three aggravating factors for penalty consideration: the nature and seriousness of the offense, the effect of the offense on the supervisor's confidence in the appellant's ability to perform assigned duties, and whether the appellant was on

notice of the rules that were violated. *Id.* at 115-18. The appellant's union submitted a written reply on his behalf. *Id.* at 34-105. The deciding official sustained seven specifications for charge one, five specifications for charge two, and both specifications for charge three. *Id.* at 23. He reviewed the Douglas factors in an accompanying worksheet and identified seven of them to be aggravating factors in his decision. *Id.* at 23, 27-31. He directed the appellant's removal effective August 8, 2013, and advised him of his Board appeal rights. *Id.* at 23-24.

¶5      The appellant initiated a Board appeal challenging his removal. IAF, Tab 1 at 4. The administrative judge conducted a hearing and issued an initial decision that mitigated the appellant's removal to a 45-day suspension. IAF, Tab 24, Initial Decision (ID) at 1. The administrative judge found the agency proved the seven specifications of unauthorized removal of government property and the five specifications of unauthorized possession of government property. ID at 6-7. She found the agency proved the appellant authorized a coworker to remove plastic bags filled with 25 rolls of toilet paper on four occasions, and that the appellant removed similar bags filled with toilet paper on three occasions. ID at 4. The administrative judge also found that the appellant possessed in his home 83 hand sanitizer bottles, 68 soap bars, and 54 toilet paper rolls that belonged to FEMA. ID at 6-7. She also found that the agency proved one specification of misuse of a government computer. ID at 8, 10. The administrative judge found the appellant failed to prove his due process claim because he did not produce any evidence that either the proposing or deciding official in the decision-making process considered or relied upon the anonymous note (a copy of which the appellant claimed he was not provided with), referenced in the proposal letter. ID at 10. In reviewing the agency's penalty determination, the administrative judge found that the deciding official did not give serious consideration to a lesser penalty than removal, the appellant's rehabilitative potential, or the fact that the appellant's prior supervisor had approved removing

and possessing government property. ID at 12-13. The administrative judge noted that the record did not support the agency's argument that the appellant could not continue to provide efficient service to the government, and so the penalty of removal exceeded the tolerable limits of reasonableness. ID at 13.

¶6     The agency has filed a timely petition for review of the initial decision, arguing that the Board should defer to its determination that removal was the appropriate penalty. Petition for Review (PFR) File, Tab 1. The appellant has filed an untimely document that he states is a cross petition for review, however, he alleges no error and argues that the initial decision should be sustained. PFR File, Tab 3 at 1, 3, 7. Because the appellant has not alleged any error in the initial decision, we construe his untimely submission as a response to the agency's petition for review and not a cross petition for review under the Board's regulations. *See* 5 C.F.R. § 1201.114(a). Because we find that the deciding official considered aggravating factors not listed in the proposal notice, we do not reach the parties' arguments on petition for review. Instead, we reverse the appellant's removal on due process grounds.

¶7     When an agency intends to rely on aggravating factors as the basis for the imposition of a penalty, such factors should be included in the advance notice of adverse action so that the employee will have a fair opportunity to respond to those factors before the agency's deciding official. *Lopes v. Department of the Navy*, 116 M.S.P.R. 470, ¶ 5 (2011). When a deciding official relies on information, which the appellant is not on notice may be considered, the information is referred to as an ex parte communication. *See Stone v. Federal Deposit Insurance Corporation*, 179 F.3d 1368, 1376-77 (Fed. Cir. 1999) (discussing when ex parte concerns arise in connection with an adverse action); *see also* Black's Law Dictionary 316 (9th ed. 2009) (defining an ex parte communication as one "between counsel and the court when opposing counsel is not present," and noting that "such communications are ordinarily prohibited"). Our reviewing court has explained that, if an employee has not been given notice

of aggravating factors contributing to an enhanced penalty, the ex parte communication with the deciding official may constitute a constitutional due process violation because it potentially deprives the employee of notice of all the evidence being used against him and the opportunity to respond to it. *Ward v. U.S. Postal Service*, 634 F.3d 1274, 1280 (2011). However, "[o]nly ex parte communications that introduce new and material information to the deciding official" constitute due process violations. *Stone*, 179 F.3d at 1377. The "ultimate inquiry" is whether the ex parte communication is "so substantial and so likely to cause prejudice that no employee can fairly be required to be subjected to a deprivation of property under such circumstances." *Ward*, 634 F.3d at 1279.

¶8        The Board will consider the following factors, among others, to determine whether an ex parte contact is constitutionally impermissible: (1) whether the ex parte communication merely introduces "cumulative" information or new information; (2) whether the employee knew of the information and had a chance to respond to it; and (3) whether the ex parte communications were of the type likely to result in undue pressure upon the deciding official to rule in a particular manner. *Bennett v. Department of Justice*, 119 M.S.P.R. 685, ¶ 8 (2013). A due process violation is not subject to the harmless error test; instead, the employee is automatically entitled to a new, constitutionally-correct removal proceeding. *Ward*, 634 F.3d at 1279. The Board has determined that this analysis applies not only to ex parte communications introducing information that was previously unknown to the deciding official, but also to information personally known and considered by the deciding official, if that information was not included in the notice of proposed removal to the appellant. *Wilson v. Department of Homeland Security*, 120 M.S.P.R. 686, ¶ 9 (2014).

¶9        The deciding official stated in his decision letter that he considered the Douglas factors indicated on the worksheet attached to his letter. IAF, Tab 16 at 23. On the attached worksheet, the deciding official indicated the three

aggravating factors considered by the proposing official, and added an additional four factors as aggravating. IAF, Tab 16 at 27-31, 115-18; *see* PFR File, Tab 3 at 31 (table comparing Douglas factors between deciding and proposing officials). Those factors were: the employee's job level and type of employment, the notoriety of the offense or its impact on the agency's reputation, the potential for the employee's rehabilitation, and the adequacy and effectiveness of alternative sanctions to deter such conduct in the future. IAF, Tab 16 at 28-31. Regarding the appellant's job level, the deciding official explained that the appellant was to set an example for new hires at the agency's biggest distribution center. *Id.* at 28. For the notoriety factor, the deciding official explained that if the misconduct were to become public, it would damage the agency's reputation and potentially result in a loss of trust and confidence in the agency. *Id.* at 30. However, the record does not indicate that the appellant's conduct garnered any public attention. For the rehabilitation factor, the deciding official determined that there were repeated incidents of the same offenses, suggesting that the appellant could not be rehabilitated. *Id.* Similarly for the alternative sanctions factor, the deciding official also considered the repeated incidents, along with the seriousness of the conduct, and the potential impact on the agency. *Id.* at 31.

¶10        Here, the Douglas factor analysis introduced new information because the deciding official considered additional factors to be aggravating. The notice of proposed removal contained none of the information detailed by the deciding official regarding the four additional aggravating factors. *Id.* at 109-18. The proposing official's Douglas factors worksheet reflects each of the four factors as being either neutral or not applicable. *Id*. 115-18. The proposing official also noted that the appellant had the potential to be rehabilitated, contrary to the conclusion of the deciding official. *Id*. at 117. There is no evidence in the record to suggest that the deciding official shared any of the information regarding the additional aggravating factors with the appellant prior to his issuance of the

decision letter.[2]   Therefore, we find that the deciding official's consideration of four additional Douglas factors was new information not included in the agency's proposal notice.

¶11     To find a violation of the appellant's due process rights, not only must the ex parte communication considered by the deciding official be new, but the communication also must be material. *See Ward*, 634 F.3d at 1279. An ex parte communication is material when it influences the deciding official's penalty determination. *Seeler v. Department of the Interior*, 118 M.S.P.R. 192, ¶ 9 (2012). The deciding official stated in his decision letter that he took into consideration all of the Douglas factors and referenced his worksheet. IAF, Tab 16 at 23. Further, his testimony reflected consideration of the new factors as part of the penalty determination. Hearing Transcript at 134-41. Although the deciding official did not explicitly state that he was influenced by the additional aggravating factors, we find that his specific identification of them in the decision letter shows that the determination was material to his decision in this case. *See Silberman v. Department of Labor*, 116 M.S.P.R. 501, ¶ 12 (2011) (specific identification of supervisory memoranda of unprofessional conduct as factors in the agency's suspension decision showed that they were material to the case).

¶12     As to the second *Stone* factor, there is no evidence in the record that the appellant knew of the deciding official's consideration of additional Douglas factors. The appellant did not present an oral reply and presented only a written reply to the deciding official. IAF, Tab 16 at 23, 37-105. We find no evidence that the appellant had the opportunity to respond to the additional aggravating factors.

---

[2] For example, the appellant did not file a grievance regarding his removal, which might have led to the sharing of this information. IAF, Tab 1 at 5; *see Henton v. U.S. Postal Service*, 102 M.S.P.R. 572, ¶¶ 11-13 (2006) (finding the requirements of due process met notwithstanding the absence of a proposal notice where the appellant had notice and an opportunity to respond in the grievance process).

¶13      In *Ward*, our reviewing court clarified that the third *Stone* factor of undue pressure is only one of several enumerated factors and is not the ultimate inquiry in the *Stone* analysis. *See Ward*, 634 F.3d at 1280 n.2. The court added that, although ex parte communications of this type may "make it more likely that an appellant was deprived of due process," the lack of undue pressure may be less relevant to finding a constitutional violation where the deciding official "admits that the ex parte communication influenced his penalty determination." *Id.* Here, we find that the additional aggravating factors in the decision letter's Douglas factors worksheet, along with the manner in which the information was used in the penalty determination, establishes that the appellant's right to due process was violated by the deciding official's ex parte communication, and that the third factor is thus less relevant. Therefore, we conclude that the agency may not remove the appellant unless and until he is afforded a new constitutionally-correct removal procedure. *See Lopes*, 116 M.S.P.R. 470, ¶ 13. Accordingly, we VACATE the initial decision and do not sustain the removal action.

## ORDER

¶14      We ORDER the agency to cancel the removal action dated August 8, 2013. *See Kerr v. National Endowment for the Arts*, 726 F.2d 730 (Fed. Cir. 1984). The agency must complete this action no later than 20 days after the date of this decision.

¶15      We also ORDER the agency to pay the appellant the correct amount of back pay, interest on back pay, and other benefits under the Office of Personnel Management's regulations, no later than 60 calendar days after the date of this decision. We ORDER the appellant to cooperate in good faith in the agency's efforts to calculate the amount of back pay, interest, and benefits due, and to provide all necessary information the agency requests to help it carry out the Board's Order. If there is a dispute about the amount of back pay, interest due,

and/or other benefits, we ORDER the agency to pay the appellant the undisputed amount no later than 60 calendar days after the date of this decision.

¶16     We further ORDER the agency to tell the appellant promptly in writing when it believes it has fully carried out the Board's Order and of the actions it took to carry out the Board's Order.  The appellant, if not notified, should ask the agency about its progress.  *See* 5 C.F.R. § 1201.181(b).

¶17     No later than 30 days after the agency tells the appellant that it has fully carried out the Board's Order, the appellant may file a petition for enforcement with the office that issued the initial decision on this appeal if the appellant believes that the agency did not fully carry out the Board's Order.  The petition should contain specific reasons why the appellant believes that the agency has not fully carried out the Board's Order, and should include the dates and results of any communications with the agency.  5 C.F.R. § 1201.182(a).

¶18     For agencies whose payroll is administered by either the National Finance Center of the Department of Agriculture (NFC) or the Defense Finance and Accounting Service (DFAS), two lists of the information and documentation necessary to process payments and adjustments resulting from a Board decision are attached.  The agency is ORDERED to timely provide DFAS or NFC with all documentation necessary to process payments and adjustments resulting from the Board's decision in accordance with the attached lists so that payment can be made within the 60-day period set forth above.

### NOTICE TO THE APPELLANT REGARDING
### YOUR RIGHT TO REQUEST
### ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set out at Title 5 of the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g).  The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202, and 1201.203.  If you believe you meet these requirements, you must file a motion for attorney fees

WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your attorney fees motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for your court appeal, you may visit our website at http://www.mspb.gov/probono for a list of

attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the court. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                       _____
                                     William D. Spencer
                                     Clerk of the Board

Washington, D.C.



| | **DFAS CHECKLIST** |
|---|---|
| | **INFORMATION REQUIRED BY DFAS IN ORDER TO PROCESS PAYMENTS AGREED UPON IN SETTLEMENT CASES OR AS ORDERED BY THE MERIT SYSTEMS PROTECTION BOARD** |

## CIVILIAN PERSONNEL OFFICE MUST NOTIFY CIVILIAN PAYROLL OFFICE VIA COMMAND LETTER WITH THE FOLLOWING:

1. Statement if Unemployment Benefits are to be deducted, with dollar amount, address and POC to send.

2. Statement that employee was counseled concerning Health Benefits and TSP and the election forms if necessary.

3. Statement concerning entitlement to overtime, night differential, shift premium, Sunday Premium, etc, with number of hours and dates for each entitlement.

4. If Back Pay Settlement was prior to conversion to DCPS (Defense Civilian Pay System), a statement certifying any lump sum payment with number of hours and amount paid and/or any severance pay that was paid with dollar amount.

5. Statement if interest is payable with beginning date of accrual.

6. Corrected Time and Attendance if applicable.

## ATTACHMENTS TO THE LETTER SHOULD BE AS FOLLOWS:

1. Copy of Settlement Agreement and/or the MSPB Order.

2. Corrected or cancelled SF 50's.

3. Election forms for Health Benefits and/or TSP if applicable.

4. Statement certified to be accurate by the employee which includes:

    a. Outside earnings with copies of W2's or statement from employer.
    b. Statement that employee was ready, willing and able to work during the period.
    c. Statement of erroneous payments employee received such as; lump sum leave, severance pay, VERA/VSIP, retirement annuity payments (if applicable) and if employee withdrew Retirement Funds.

5. If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.



**NATIONAL FINANCE CENTER CHECKLIST FOR BACK PAY CASES**

Below is the information/documentation required by National Finance Center to process payments/adjustments agreed on in Back Pay Cases (settlements, restorations) or as ordered by the Merit Systems Protection Board, EEOC, and courts**.**

1. Initiate and submit AD-343 (Payroll/Action Request) with clear and concise information describing what to do in accordance with decision.

2. The following information must be included on AD-343 for Restoration:

    a.  Employee name and social security number.
    b.  Detailed explanation of request.
    c.  Valid agency accounting.
    d.  Authorized signature (Table 63)
    e.  If interest is to be included.
    f.  Check mailing address.
    g.  Indicate if case is prior to conversion.  Computations must be attached.
    h.  Indicate the amount of Severance and Lump Sum Annual Leave Payment to be collected. (if applicable)

## Attachments to AD-343

1.  Provide pay entitlement to include Overtime, Night Differential, Shift Premium, Sunday Premium, etc. with number of hours and dates for each entitlement. (if applicable)

2.  Copies of SF-50's (Personnel Actions) or list of salary adjustments/changes and amounts.

3.  Outside earnings documentation statement from agency.

4.  If employee received retirement annuity or unemployment, provide amount and address to return monies.

5.  Provide forms for FEGLI, FEHBA, or TSP deductions. (if applicable)

6.  If employee was unable to work during any or part of the period involved, certification of the type of leave to be charged and number of hours.

7.  If employee retires at end of Restoration Period, provide hours of Lump Sum Annual Leave to be paid.

NOTE:  If prior to conversion, agency must attach Computation Worksheet by Pay Period and required data in 1-7 above.

The following information must be included on AD-343 for Settlement Cases: (Lump Sum Payment, Correction to Promotion, Wage Grade Increase, FLSA, etc.)

    a.  Must provide same data as in 2, a-g above.
    b.  Prior to conversion computation must be provided.
    c.  Lump Sum amount of Settlement, and if taxable or non-taxable.

If you have any questions or require clarification on the above, please contact NFC's Payroll/Personnel Operations at 504-255-4630.