NOTE:  This disposition is nonprecedential.

# United States Court of Appeals
# for the Federal Circuit

---

**DONALD FRANCIS HAIRSTON,**
*Petitioner*

**v.**

**DEPARTMENT OF DEFENSE,**
*Respondent*

---

2020-1607

---

Petition for review of the Merit Systems Protection Board in No. DC-0752-20-0126-I-1.

---

Decided:  November 10, 2020

---

DONALD FRANCIS HAIRSTON, Culpeper, VA, pro se.

STEPHANIE FLEMING, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent.  Also represented by JEFFREY B. CLARK, DEBORAH ANN BYNUM, ROBERT EDWARD KIRSCHMAN, JR.

---

Before O'MALLEY, WALLACH, and TARANTO, *Circuit Judges.*

PER CURIAM.

Donald Francis Hairston appeals from a decision of the Merit Systems Protection Board ("the Board") affirming a removal decision by the Department of Defense ("the agency"). *Hairston v. Dep't of Def.*, No. DC-0752-20-0126-I-1, 2020 MSPB LEXIS 456 (Feb. 6, 2020) ("*Final Decision*"). Because we find no violation of Hairston's due process rights and no harmful procedural error, we *affirm*.

## BACKGROUND

Hairston was employed as a Medical Records Technician at the Walter Reed National Military Medical Center, a medical treatment facility under the authority of the Department of Defense, in Bethesda, Maryland. *Final Decision*, 2020 MSPB LEXIS 456, at *1. On or around February 8, 2019, a routine audit and cybersecurity service-provider monitoring process determined that Hairston used his government computer to access his personal social media account and converse with individuals about purchasing and using illegal drugs, engage in sexually explicit conversations, and view inappropriate pictures of others. S.A. 23.[1]

On September 12, 2019, the agency issued Hairston a notice of proposed removal on two charges, "Misuse of Government Property (For Other Than Official Purposes)" and "Conduct Unbecoming a Federal Employee (Immoral, Indecent or Disgraceful Conduct)." *Id.* The notice described Hairston's right to make an oral reply. S.A. 24. It also explained his right to obtain a representative or attorney to assist him with the reply and accompany him to the hearing at which he gave his reply. *Id.* The notice specified that "[a]ny representative designation should be in writing

---

[1]    "S.A." refers to Respondent's Supplemental Appendix, available at Dkt. No. 15.

and submitted to the Designated Deciding Official (DDO)." *Id.*

The notice also described Hairston and his representative's right to review the material on which the removal action was based, including setting the location for review and providing contact information for the contact person, Richard Simonton, a Human Resources Specialist at Walter Reed. *Id.* Hairston had three phone conversations with Simonton, during which Simonton explained that the evidence could not be sent electronically. S.A. 44. Simonton also scheduled an in-person meeting just before Hairston's oral reply, during which Hairston would be able to review the evidence. S.A. 41, 44.

On September 27, 2019, the day of Hairston's oral reply, Edward Baker, a union representative, met with Simonton to review the evidence and Hairston's case file. S.A. 41, 43. When Hairston arrived, he met with Baker, but Simonton asserts that Hairston did not request to see the evidence. *Final Decision*, 2020 MSPB LEXIS 456, at *11; *see also* S.A. 40, 42. Baker and Hairston then spoke privately for 15 to 20 minutes before being informed that the DDO had arrived. S.A. 41–42. "[U]pon Mr. Hairston's request," the two proceeded to meet with the DDO for the oral reply. S.A. 42. Simonton attests that neither Hairston nor Baker asked Simonton to review the evidence again. S.A. 41.

At the oral reply, Hairston explained that he had a death in the family and struggled with depression and anger management. S.A. 29. He also stated that he had been struggling with an addiction to pornography, and that he occasionally used illicit drugs to combat his depression. *Id.* Hairston did not deny either of the removal charges. *Id.* On October 4, 2019, the agency sustained both charges against Hairston. *Final Decision*, 2020 MSPB LEXIS 456, at *2. He was removed effective October 15, 2019. *Id.*

On November 7, 2019, Hairston appealed the removal decision to the Board.  In his appeal, Hairston asserted that his due process rights had been violated because the decision was based on evidence that "was not disclosed or presented to [him]."  S.A. 40.  He indicated that he told Simonton several times that he had not seen the evidence against him.  *Id.*  He also explained, "I was introduced to my Union Representative, whom I had tried to contact on several occasions prior to our meeting that day to discuss my case.  We had very little time to speak before we met with" agency staff.  *Id.*

On January 22, 2020, the administrative judge ("AJ") held a prehearing conference to review Board procedures and the pertinent law; to identify, narrow, and define the issues; and to obtain stipulations.  S.A. 51.  Hairston indicated during this conference that he did not dispute the agency's charges.[2]  S.A. 52–53.  Hairston asserted that Baker failed to provide proper representation, which the AJ interpreted to mean there was no dispute that Hairston designated Baker to serve as his representative.  S.A. 52, 52 n.3.

On February 6, 2020, the AJ issued an initial decision affirming the agency's action removing Hairston from federal employment.  *Final Decision*, 2020 MSPB LEXIS 456, at *1.  First, the AJ found that the agency had proven both charges by preponderant evidence.  *Id.* at *3–9.  At oral reply before the agency and the prehearing conference before the AJ, Hairston did not deny the misconduct on which both charges were based.  *Id.* at *5–6.  He, in fact, admitted at oral reply to occasionally using illicit drugs to combat his depression.  *Id.* at *6.  And the AJ reviewed Hairston's case

---

[2]    Before the AJ, Hairston asserted that the agency's penalty was disparate and that the agency engaged in disability discrimination.  *See Final Decision*, 2020 MSPB LEXIS 456, at *2.  Those issues are not raised on appeal.

file and found there were sexually explicit photos on his government computer. *Id.* at *8–9.

Second, the AJ found no violation of Hairston's due process rights and no harmful procedural error. *Id.* at *9. The notice of proposed removal informed Hairston of the charges, his right to representation, and his right to respond. *Id.* at *10. Hairston had an opportunity to review the evidence after he spoke to Simonton and scheduled a meeting the day of his reply to review the evidence. *Id.* at *10–12. The AJ also found that Baker was Hairston's representative and that he had the opportunity to review the evidence, too. *Id.* at *12–13. Baker had identified himself as "a union representative," met privately with Hairston prior to the oral reply, and accompanied Hairston to the reply. *Id.* at *14–15. Hairston never made it known to the agency that Baker was not his representative. *Id.* at *12. And the AJ found that Hairston's claim that Baker breached his "duty of fair representation" was a concession that Baker, whatever his failings, was Hairston's representative. *Id.* at *13. Finally, the AJ found that the failure to designate in writing was only a procedural error. *Id.* at *12 n.4.

Hairston did not petition the Board to review the AJ's initial decision, and it became the final decision of the Board. Hairston timely appealed to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

Our jurisdiction to review Board decisions is limited. By statute, we must affirm the Board's decision unless it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c).

"In general, public employees possess a constitutionally protected property right in their employment and are entitled to due process at each stage of their removal proceedings." *Ramirez v. Dep't of Homeland Sec.*, 975 F.3d 1342, 1349 (Fed. Cir. 2020). "Due process requires that the employee be afforded notice 'both of the charges and of the employer's evidence' and an 'opportunity to respond' before being removed from employment." *Ward v. U.S. Postal Serv.*, 634 F.3d 1274, 1279 (Fed. Cir. 2011) (quoting *Stone v. FDIC*, 179 F.3d 1368, 1375–76 (Fed. Cir. 1999)).

Public employees are also "entitled to . . . other procedural protections . . . afforded them by statute, regulation, or agency procedure." *Id.* at 1281. For instance, Office of Personnel Management regulations require an agency to provide the employee with an opportunity to review any materials on which it relied to support its charges. 5 C.F.R. 752.404(b)(1). Errors in the application of these procedures are reversed only if they are harmful. *See Ward*, 634 F.3d at 1281. To prove harmful error, the employee must show that the error is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See id.* at 1281–82; 5 C.F.R. 1201.4(r).

Hairston's primary argument on appeal is that his due process rights were violated because he did not have an opportunity to review the evidence on which the agency relied before his termination. Hairston undoubtedly had the *opportunity* to review the evidence against him. The notice of proposed removal provided the location at which Hairston could review the evidence, as well as Simonton's name and contact information. S.A. 24. Hairston's phone records indicate that he spoke with Simonton on three occasions about reviewing the evidence. S.A. 44. And Simonton submitted a sworn statement that Hairston was scheduled to review all of the evidence at Simonton's office the day of Hairston's oral reply. S.A. 41. That Hairston did not actually avail himself of the opportunity to review the evidence

against him personally does not imply that he had no opportunity to review the evidence.

There is no dispute, moreover, that Baker reviewed the evidence against Hairston as Hairston's representative. On appeal, Hairston asserts that Baker did not claim to be *his* union representative, but only *a* union representative. Baker's own sworn statement does say that he introduced himself to Hairston as "*a* Union Representative." S.A. 43 (emphasis added). But we find strong support in the record to support the conclusion that Baker was Hairston's representative.

First, Hairston himself referred to Baker as his representative. *See* S.A. 40 (describing Baker as "my Union Representative" in Hairston's appeal to the Board); *Final Decision*, 2020 MSPB LEXIS 456, at *13 (asserting that Baker breached "a duty of fair representation"). Second, Hairston's conduct confirms that Baker was his representative. Hairston and Baker met privately prior to Hairston's oral reply, during which, according to Hairston himself, they discussed the agency's evidence. *Final Decision*, 2020 MSPB LEXIS 456, at *14; *see also* S.A. 41, 42. Baker then accompanied Hairston to the meeting with the DDO. S.A. 40–43. And third, others at the oral reply viewed Baker as Hairston's representative. S.A. 29 (DDO summary memorandum of oral reply, stating "Mr. Hairston was represented by Mr. Ed Baker, of the Union"); S.A. 41 (Simonton's sworn statement, that he met Baker "in regards [sic] to Mr. Hairston's verbal reply"); S.A. 42 (sworn statement of Chief, Labor Management Employee Relations, that "Mr. Hairston met with his elected Union representative Mr. Ed Baker"). At no time did Hairston make known to the agency that Baker was not his representative. *Final Decision*, 2020 MSPB LEXIS 456, at *15.

Admittedly, it was procedural error for the agency to treat Baker as Hairston's representative without a written designation. *See* S.A. 24 ("Any representative designation

should be in writing and submitted to the [DDO].") Indeed, the agency concedes on appeal that this was a procedural error. But Hairston fails to show that the error is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. Had the error been cured by the submission of a writing designating Baker as Hairston's representative, it is unclear how the agency would have reached a different result. Even with a different representative at the pre-hearing conference before the AJ, Hairston continued to say that he did not contest the charged misconduct. *Final Decision*, 2020 MSPB LEXIS 456, at *4–5, 8. We find the agency's procedural error harmless.

The same is true with respect to Hairston's claim that Baker's representation was inadequate. Putting aside the question of whether there is a substantive right to adequate representation in this context, Hairston has never disputed—and does not now dispute—the charges against him. That fact alone supports dismissal, and no representative, no matter how talented, could dispute that fact.

Finally, because Hairston did not contest the merits of his charges before the Board, he may not assert any arguments on the merits before us.

### CONCLUSION

We have considered Hairston's arguments and find them to be without merit. We therefore *affirm* the Board's final decision.

## AFFIRMED

### COSTS

No costs.